No. 89,773
No. 90,402

JAMES BLAND, INDIVIDUALLY AND AS HEIR AT LAW AND PERSONAL REPRESENTATIVE OF THE ESTATE OF FELICIA BLAND, DECEASED; AND MICHAEL A. RENEE RODRIQUEZ, THROUGH HER GUARDIAN AND CONSERVATOR TIBURCIO J. REYES, JR., INDIVIDUALLY AND AS HEIR AT LAW OF FELICIA BLAND, DECEASED, *Appellants*, v. SEAN M. SCOTT; DANA RIEKE; LAWRENCE H. RIEKE; BARRETT A. BOTTEMULLER; THE UNIVERSITY OF KANSAS; THE FRATERNITY OF PHI GAMMA DELTA, INC.; PHI GAMMA DELTA HOUSE CORPORATION; AND PHI GAMMA DELTA CHAPTER HOUSE ASSOCIATION, *Appellees*.

112 P.3d 941

Opinion filed June 10, 2005.

Daniel F. Church, of McAnany, Van Cleave & Phillips, P.A., of Roeland Park, argued the cause, and Byron A. Bowles and G. Stuart Englebert, of the same firm, were with him on the briefs for appellants.

Paul Hasty, Jr., of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellees The Fraternity of Phi Gamma Delta, Inc., Phi Gamma Delta House Corporation, and Phi Gamma Delta Chapter House Association.

Sara L. Trower, of Lawrence, argued the cause, and Rose A. Marino, of Lawrence, was with her on the brief for appellee University of Kansas.

The opinion of the court was delivered by

MCFARLAND, C.J.: This is a wrongful death and survivorship action seeking damages for the death of Felicia (Lisa) Bland. The district court dismissed the case as to all nonindividual defendants on the ground the plaintiffs had failed to state a claim on which relief may be granted. The dismissals were made final judgments pursuant to K.S.A. 2004 Supp. 60-254(b), thereby permitting immediate appeal therefrom despite the action continuing as to the named individual defendants.

## STANDARD OF REVIEW

Before proceeding further, we need to state the rules relative to review of a dismissal for failure to state a claim.

In *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, Syl. ¶ 1, 35 P.3d 815 (2001), *cert. denied* 537 U.S. 841 (2002), we stated:

"Upon appellate review of a district court's order granting a motion to dismiss for failure to state a claim, an appellate court is required to assume that the facts alleged by the plaintiffs are true, along with any inferences reasonably to be drawn therefrom. The court must also decide whether those facts and inferences state a claim on the theories presented by the plaintiffs and also on any other possible theory."

Since no discovery had taken place when the motion to dismiss was filed, the appellate court must rely on the pleadings and any

exhibits attached thereto. *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 4-5, 20 P.3d 39 (2001).

A district court's dismissal of an action based on the failure to state a claim is a question of law subject to unlimited review. *Ritchie Paving, Inc. v. City of Deerfield*, 275 Kan. 631, Syl. ¶ 1, 67 P. 3d 843 (2003).

## STATEMENT OF FACTS

Plaintiffs' petition consists of 95 separately numbered paragraphs stating facts in general and also facts specific to each defendant, and the claims plaintiffs are asserting against each defendant. The facts relied upon by the district court in dismissing the case as to the defendants before us are taken from the petition filed by the plaintiffs and, as the district court stated, "are assumed as true."

With the previously stated review requirements in mind, we place the issues in context by summarizing the facts as pled by the plaintiffs as follows. Sean Scott was 16 years old at the time of the events in issue. On the afternoon of September 16, 2000, Sean drove from the family home in Shawnee to visit his 19-year-old brother, Mike Scott, at the Phi Gamma Delta fraternity house in Lawrence where Mike resided. The Scott brothers stayed at the fraternity house for a few hours. They then went to The Wheel, a local bar, to join Dana and Lawrence Rieke, the mother and stepfather of the Scott brothers. At The Wheel, the Riekes provided the brothers and other minors in the party with alcoholic beverages, including beer and shots of tequila. The Riekes went to a football game, and the Scott brothers walked back to the fraternity house. While there, fraternity members provided Sean with substantial amounts of alcohol, including beer and shots of rum. They urged Sean to drink and ridiculed him if he did not want to drink more. Ultimately, Sean left the fraternity driving his car.

Sean traveled east on K-10 highway at a high rate of speed. He lost control of his vehicle, crossed the center median, and crashed into a vehicle driven by Lisa Bland. Ms. Bland died as a result of injuries received in the accident. Sean's blood alcohol level was

tested at .15. The record reflects Sean was subsequently convicted of involuntary manslaughter in Johnson County.

As it pertains to this appeal, plaintiffs filed a multi-count suit claiming, *inter alia*, negligence by Phi Gamma Delta, Inc.; negligence per se by Phi Gamma Delta, Inc; negligence by the University of Kansas (KU) under an assumption of duty theory; and negligence by The Fraternity of Phi Gamma Delta, Inc., Phi Gamma Delta House Corporation, and Phi Gamma Delta Chapter House Association, also under an assumption of duty theory. Generally, the claims under the assumption of duty theory rest on the Restatement (Second) of Torts § 324A (1964). Plaintiffs assert that through various policies governing the consumption of alcohol on campus or at the fraternity house, the fraternity defendants and KU had undertaken a duty to provide services to Sean which were necessary for the protection of the plaintiffs under facts as set forth in the petition.

At this point, it is appropriate to identify and differentiate among the Phi Gamma Delta defendants. According to the petition filed herein, these parties are: (1) The Fraternity of Phi Gamma Delta, Inc., a Kentucky corporation, which "operates and/or oversees" the operation of several chapters, including Pi Deuteron (Chapter 144 situated in Lawrence); (2) Phi Gamma Delta House Corporation, a Kentucky corporation, which "operates and/or oversees" housing for the fraternity's chapters, including the Lawrence facility; and (3) Phi Gamma Delta Chapter House Association, a Kansas corporation, which owns and operates the premises where the Pi Deuteron chapter is located. Other facts pled by the plaintiffs will be stated as necessary to resolution of particular issues.

## ALCOHOL PROVIDERS' LIABILITY TO THIRD PARTIES

### Dram Shop Act and *Ling v. Jan's Liquors* Revisited

The key holdings of *Ling v. Jan's Liquors*, 237 Kan. 629, Syl. ¶¶ 3-6, 703 P.2d 731 (1985), are:

"At common law, and apart from statute, no redress exists against persons selling, giving or furnishing intoxicating liquor for resulting injuries or damages due to the acts of intoxicated persons, either on the theory that the dispensing of the liquor constituted a direct wrong or that it constituted actionable negligence. Since

Kansas does not have a dram shop act, the common-law rule prevails in Kansas. *Stringer v. Calmes*, 167 Kan. 278, 205 P.2d 921 (1949)."

"Breach of a duty imposed by law or ordinance may be negligence per se, unless the legislature clearly did not intend to impose civil liability. K.S.A. 41-715, which prohibits the dispensing of alcoholic liquors to certain classes of persons, was intended to regulate the sale of liquor and was not intended to impose civil liability. Thus, a liquor vendor's violation of K.S.A. 41-715 is not negligence per se."

"The common law is subject to modification by judicial decision in light of changed conditions. However, declaration of public policy is normally the function of the legislative branch of government."

"The decision whether to impose liability upon the suppliers of alcohol for the torts of their intoxicated patrons is a matter of public policy which the legislature is best equipped to handle."

With the exception of the minor driver, Sean Scott, the alleged claims against all other defendants, including KU and the fraternity entities, essentially arise from the providing of liquor to Sean and the injuries to and death of third party Lisa Bland caused by Sean while intoxicated.

The district court, in reliance upon *Ling*, dismissed the claims against the parties in this appeal. Nevertheless, the plaintiffs seek to avoid the consequences of the law as set forth in *Ling* by asking the court to:

1. Overrule *Ling* and judicially establish third-party liability against dispensers of alcoholic beverages to minors; or
2. Hold that a violation of the statutes prohibiting dispensing of alcohol to minors is negligence per se and gives rise to a separate cause of action; or
3. Limit *Ling* to its facts and distinguish it from the facts herein; or
4. Hold the Kansas Liquor Control Act, K.S.A. 41-101 *et seq.*, unconstitutional (1) insofar as it did not supply a quid pro quo for the repeal of the dram shop act, and (2) as violative of Section 18 of the Bill of Rights of the Kansas Constitution; or
5. Allow a separate cause of action against the appellees herein based on an alleged violation of Restatement (Second) of Torts § 324A (1964) (undertaking to render services to an-

other which are necessary for the protection of a third person).

*Ling v. Jan's Liquors* was an action by an injured third party against the liquor vendor who sold liquor to the minor who injured the third party in an automobile accident. The decision discussed the history and development of the dram shop law in considerable detail. In holding that an action in negligence could not be maintained under Kansas law, the *Ling* court noted that the common-law rule was based on the theory that the cause of the harm was "the act of the purchaser in drinking the liquor and not the vendor in selling it." 237 Kan. at 635.

To support its reasoning, the *Ling* court set out the historical background of dram shop legislation beginning with the dram shop act enacted by the Kansas territorial legislature. That law provided a civil cause of action against the seller, the barterer, or the giver of intoxicating liquors for harm caused "by any intoxicated person or in consequence of intoxication." 237 Kan. at 636. That law also survived three challenges to its constitutionality and was included in both the 1881 and 1923 revision of statutes. It read as follows:

" 'Every wife, child, parent, guardian or employer, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, such wife, child, parent or guardian, employer or other person shall have a right of action, in his or her own name, against any person who shall, by selling, bartering or giving intoxicating liquors, have caused the intoxication of such person, for all damages actually sustained, as well as for exemplary damages; and a married woman shall have the right to bring suits, prosecute and control the same, and the amount recovered, the same as if unmarried; and all damages recovered by a minor under this act shall be paid either to such minor, or to his or her parents, guardian, or next friend, as the court shall direct; and all suits for damages under this act shall be by civil action in any of the courts of this state having jurisdiction thereof.' " R.S. 1923, 21-2150.

The Kansas dram shop law was extremely broad. Liability was not limited to vendors of alcohol, and physical injury to a third party was not required. A wife's or child's loss of support owed by the husband or father was included. The broadness of the law is not surprising as Kansas was long recognized as being in the forefront of the temperance movement.

In 1947, an amendment to Art. 15, § 10 of the Kansas Constitution prohibited only the open saloon and gave the legislature broad sweeping power to regulate, license, and tax both the manufacture and sale of liquor; possession and transportation of liquor also became subject to regulation. L. 1947, ch. 248, sec. 1. Then in 1949, the legislature repealed certain statutes under the "Bone-Dry Law" in response to the repeal of the Kansas Constitutional prohibition law. In further exercising its power concerning liquor policy, the legislature enacted the "Kansas Liquor Control Act" (ch. 41, art. 1 through art. 27.). This Act embodied a comprehensive scheme regulating liquor from the time of its manufacture or importation until sold by a licensed retailer. *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 752, 408 P.2d 877 (1965). The Act included a prohibition against the sale of intoxicating liquors to minors which is still found in amended form at K.S.A. 41-715. The *Ling* court also emphasized another key aspect of the 1949 liquor legislation as follows: "The 1949 legislature—the same legislature which enacted the criminal regulatory statute—chose not to reenact the dram shop act. It was repealed in G.S. 1949, 41-1106, and has never been reenacted." 237 Kan. at 637.

*Ling* found it significant that from the time the legislature repealed the civil liability statute in 1949 until 1985, there had been no reported case in Kansas asserting liability to third persons of one selling or furnishing liquor. "The last case to discuss the dram shop statute was *Stringer v. Calmes*, 167 Kan. 278, which was decided in 1949 prior to the repeal of the act. In that case the court held, unequivocally, that no common-law right of action existed." 237 Kan. at 638.

The *Ling* court was especially aware of developments near the time it decided the case, noting:

"In recent years, the Kansas legislature has made control of drunken drivers a high priority matter. Significant legislation has tightened the laws which deal with such offenses. The legislature of this state has considered all aspects of the problem of drunken driving in seeking solutions to the problem.

"In 1984, limited dram shop legislation was introduced. (H.B. 2661). The proposed bill imposed liability on any person negligently selling or furnishing alcoholic beverages to a minor where the minor, under the influence thereof, caused

death, personal injury or property damage to another. The bill died after it was passed out of committee.

"On January 3, 1985, dram shop legislation was proposed by the Kansas Attorney General. . . .

"Five days later (January 8, 1985), another press release from the Attorney General's office stated:

. . . .

' "If you have decided that you have come up with a bad idea then you have a responsibility to say so," Stephan said. "I have the courage to make suggestions for legislative study, and also have the courage to know when my proposals to deter drunk driving should be modified."

' "Upon reexamination, I believe that existing law can be strengthened to better combat drunk driving. The dram shop law which I proposed would only add to legal entanglements. Therefore, I am withdrawing my suggestion that a dram shop law be enacted and will continue to study further means to deal with drunk driving.' " " 237 Kan. at 638-39.

Stephan's proposed legislation would have given persons injured by an intoxicated person, their families, and employers the specific right to bring suit against liquor and beer retailers, private clubs, and taverns. The proposal suggested holding these entities liable for damages "if they sold beer or liquor to a person who already was intoxicated, or served them alcohol to the point of intoxication, provided that the intoxication contributed to the injury." 237 Kan. at 639.

Against the foregoing historical background, *Ling* addressed the plaintiffs' arguments, which are similar to those before us, as follows:

"Ling contends that the violation of K.S.A. 21-3610 and K.S.A. 41-715 (establishing criminal penalties for sale of alcoholic liquor to a minor) is a breach of a duty imposed by law and, thus, negligence per se. In other contexts this court has recognized the rule that breach of a duty imposed by law or ordinance is negligence per se, and that damages may be predicated on its violation if the breach is the proximate cause of the injury or damages or substantially contributes to the injury. *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107 (1980); *Kendrick v. Atchison, T. & S.F. Rld. Co.*, 182 Kan. 249, 260, 320 P.2d 1061 (1958). We decline to find negligence per se in this case since to do so would subvert the apparent legislative intention.

"The predecessor to K.S.A. 41-715 (of which K.S.A. 21-3610 was once a part) was first enacted in 1949, the same year the dram shop act was repealed. Since that time, the legislature, although it has considered it, has not re-created a civil cause of action in favor of those injured as a result of a violation of the liquor

laws. Clearly, the legislature would have done so had it intended for there to be a civil cause of action. K.S.A. 41-715 prohibits the dispensing of intoxicating liquors to certain classes of persons and is a comprehensive act to *regulate* the manufacture, sale, and distribution of alcoholic liquors. The legislature did not intend for it to be interpreted to impose civil liability. Therefore, we hold that the Missouri liquor vendor's violation of a criminal regulatory statute was not negligence per se.

"As previously noted, the common-law rule is that, in the absence of legislation, the suppliers of alcohol are not liable to the victims of an intoxicated tortfeasor. *Stringer*, 167 Kan. 278. The common law remains in force in this state where the constitution is silent or the legislature has failed to act. K.S.A. 77-109. However, the common law is not static. It is subject to modification by judicial decision in light of changing conditions or increased knowledge where this court finds that it is a vestige of the past, no longer suitable to the circumstances of the people of this state. Indeed, we have not hesitated to adopt a new cause of action by judicial decision where we have determined that course was compelled by changing circumstances. See, *e.g., Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974) (creating new cause of action of intentional infliction of emotional distress); *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982) (creating new cause of action for negligent entrustment). See also *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983).

"Although empowered to change the common law in light of changed conditions, this court recognizes that declaration of public policy is normally the function of the legislative branch of government. Whether Kansas should abandon the old common-law rule and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon what best serves the societal interest and need. Clearly, this is a matter of public policy which the legislature is best equipped to handle.

"The court in *Holmes v. Circo*, 196 Neb. 496, 504-05, 244 N.W.2d 65 (1976) [accord *Pelzek v. American Legion*, 236 Neb. 608, 609-10, 463 N.W.2d 321 (1990)], made the following astute observation with which we agree:

'We are mindful of the misery caused by drunken drivers and the losses sustained by both individuals and society at the hands of drunken drivers, but the task of limiting and defining a new cause of action which could grow from a fact nucleus formed from any combination of numerous permutations of the fact situation before us is properly within the realm of the Legislature.

'The imposition of a common law duty of due care would create a situation rife with uncertainty and difficulty. If the commercial vendor is liable for negligence, does the host at a social gathering owe a duty to prospective victims of guests? The difficulties of recognizing intoxication and predicting conduct of an intoxicated patron without imposing some duty of inquiry are evident. Problems could also arise in the apportionment or sorting out of liability among the owners of various bars visited on "bar hopping" excursions. The correct

standard of care to be used also presents a problem, as does the determination of whether all acts of the patron, including intentional torts, should be included within the liability of the tavern owner or operator.' " 237 Kan. at 639-41.

*Ling* and its progeny continue to hold that civil liability in this area is a public policy decision left to the Kansas Legislature. See, *e.g.*, *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 273 Kan. 828, 835, 47 P.3d 402 (2002); *Mills v. City of Overland Park*, 251 Kan. 434, 438, 837 P.2d 370 (1992); *Thies v. Cooper*, 243 Kan. 149, 155, 753 P.2d 1280 (1988); *Meyers v. Grubaugh*, 242 Kan. 716, 719, 750 P.2d 1031 (1988); *Fudge v. City of Kansas City*, 239 Kan. 369, 375, 720 P.2d 1093 (1986).

We note the 2004 Kansas Legislature had the opportunity to enact a dram shop law. House Substitute for Senate Bill No. 437 provided for civil liability against a licensee for injury to third parties by a minor or incapacitated person—limited to cases involving sales and consumption on the licensee's premises. Even this extremely narrow dram shop law failed to pass.

The 2005 Kansas Legislature had two more opportunities to enact dram shop laws. House Bill 2114 would have imposed liability under similar circumstances as 2004 Senate Bill 437. Senate Bill 144, as amended, would have imposed liability on a person hosting minors consuming alcoholic beverages on that person's premises. Both measures failed to pass.

In *Ling*, liability was sought against a retail liquor dealer. The list at the end of the opinion tallies legislative and judicially created third-party actions against vendors of liquor. Courts and legislatures have been much more reluctant to impose liability in the noncommercial social setting. See Goldberg, *One for the Road, Liquor Liability Broadens*, 73 A.B.A. J. 84 (June 1, 1987).

As we observed in *Mills v. City of Overland Park*, 251 Kan. at 443:

"The enormous difficulty in dealing with civil liability arising from the furnishing of intoxicating liquor is demonstrated in reviewing Annot., Furnishing Intoxicating Liquor—Liability, 98 A.L.R.3d 1230. Every possible legal position appears therein as the law in other jurisdictions."

The states are widely split on liability to third parties arising from the dispensing of alcohol in social settings. See Annot., *Social*

*Host's Liability for Injuries Incurred by Third Parties as a Result of Intoxicated Guest's Negligence*, 62 A.L.R.4th 16.

Plaintiffs argue that *Ling* should be overruled and that this court should judicially establish a third-party cause of action broad enough to include the factual situation herein arising as it does in a social situation. This we decline to do and continue to hold that the decision to impose liability, and under what circumstances, upon the suppliers of alcohol for the torts of their intoxicated patrons or guests is a matter of public policy which the legislature is best equipped to handle.

Plaintiffs also argue that the furnishing of liquor or cereal malt beverages to a minor is a crime under K.S.A. 41-727, K.S.A. 21-3205, K.S.A. 21-3610, and K.S.A. 41-715. Thus, the violations thereof are negligence per se, thereby giving rise to a cause of action independent of a dram shop law. Virtually the same argument was raised in *Ling*. There the court noted that negligence per se causes of action may arise out of criminal statutes in other contexts, but "decline[d] to find negligence per se in this case since to do so would subvert the apparent legislative intention. . . . Clearly, the legislature would have [re-created a civil cause of action in favor of those injured as a result of a violation of the liquor laws] had it intended for there to be a civil cause of action." 237 Kan. at 639-40. Further, the common-law rule proscribed civil liability for suppliers of alcohol for injuries resulting from the actions of intoxicated tortfeasors because any injuries were the result of the act of drinking, not the act of supplying. 237 Kan. at 635, 640. This same rationale was stated, adopted, and approved in *Mills v. City of Overland Park*, 251 Kan. 434; *Meyers v. Grubaugh*, 242 Kan. 716; and *Fudge v. City of Kansas City*, 239 Kan. 369.

Plaintiffs further argue that the holdings in *Ling* and its progeny should be limited to their facts. They seek to distinguish the case herein on the basis the fraternity members knew Sean Scott was a minor when they served him alcoholic beverages at the fraternity house. There is nothing in *Ling* or its progeny which supports such a distinction being made.

Plaintiffs next raise two constitutional arguments. First, they claim that the "Kansas Liquor Control Act is unconstitutional to the extent that it abrogates a common law remedy of persons injured by violations of the act." When the legislature statutorily supplants a remedy provided by common law, subsequent restriction or abrogation of that protected remedy must be given an adequate substitute, or a quid pro quo. Such changes are constitutional if the changes are "reasonably necessary in the public interest to promote the general welfare of the people of the state, and the legislature provides an adequate substitute remedy to replace the remedy which has been restricted." *Lemuz v. Fieser*, 261 Kan. 936, Syl. ¶ 4, 933 P.2d 134 (1997).

Second, plaintiffs also claim that the Kansas Liquor Control Act is unconstitutional as violative of Section 18 of the Bill of Rights of the Kansas Constitution, which provides: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

Defendants argue that these constitutional issues are not properly before the court as they are raised for the first time on appeal, citing *State ex rel. Brant v. Bank of America*, 272 Kan. 182, 31 P.3d 952 (2001).

Even if properly before this court, the constitutional arguments are without merit. First, Kansas did not recognize a common-law duty owed by suppliers of alcohol to third persons injured by an intoxicated person. See *Ling*, 237 Kan. at 635. Kansas enacted a dram shop act but later repealed it. This court has acknowledged that where the statutory remedy was not recognized under common law, changes to the statute do not require a quid pro quo. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 41-42, 11 P.3d 1134 (2000).

Second, as to the Bill of Rights argument, the plaintiffs are not without a remedy under the law to recover for their injuries. They have a cause of action against Sean, the tortfeasor.

In conclusion, we reject all challenges relative to the viability, extent, and applicability of *Ling*, whether asserted as an ordinary negligence claim or negligence per se. Kansas does not have a third-party action against vendors or dispensers of alcoholic bev-

erages for harm done to the third party by the person intoxicated from imbibing such beverages. Whether such liability is to be reinstated and under what circumstances and conditions are public policy decisions best handled by the legislature.

## THE RESTATEMENT (SECOND) OF TORTS
## § 324a (1964) ISSUE

The district court dismissed the claims based on the Restatement (Second) of Torts § 324A (1964) on the ground that no cause of action had been stated.

No useful purpose would be served by putting forth the various contentions raised on appeal. It is sufficient to say that one of the members of the court has died since this appeal was heard, and the remaining six justices are equally divided on this issue. Article 3, sec. 2 of the Kansas Constitution provides that the concurrence of four justices is necessary to a decision, and the rule is that when one justice is not participating in a decision and the remaining six justices are equally divided in their conclusions, the decision of the trial court must stand. See *Tramill v. Holland*, 210 Kan. 180, 499 P.2d 1075 (1972).

## CONCLUSION

The facts herein are tragic. We are very aware that deaths and injuries on our highways caused by intoxicated drivers are a major problem for Kansas and the nation. In recent years, the legislature has increased the penalties for convictions of driving under the influence in the effort to reduce the carnage. As previously discussed in this opinion and in our previous decisions, the imposition of liability on vendors and/or providers of intoxicating beverages in favor of injured third parties involves very complex issues of public policy which the legislature is best equipped to determine and establish.

We conclude the district court did not err in dismissing the action as to the defendants before us on the ground the plaintiffs had

failed to state a claim against them upon which relief could be granted.

The judgment is affirmed.

GERNON, J., not participating.