IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,869

JEFFREY D. KUDLACIK,
*Appellant*,

v.

JOHNNY'S SHAWNEE, INC., and BARLEY'S LTD.,
*Appellees.*

SYLLABUS BY THE COURT

1.

A court of last resort will follow the rule of law it established in its earlier cases unless clearly convinced the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.

2.

At common law, no redress exists against persons selling, giving, or furnishing intoxicating liquor for resulting injuries or damages because of the acts of intoxicated persons, on the theory that the dispensing of the liquor constituted either a direct wrong or actionable negligence. Since Kansas has no dram shop act, the common-law rule prevails in Kansas.

3.

Restatement (Second) of Torts § 876 (1979) is applicable when tortfeasors who act in concert engage in some affirmative conduct relating to the plaintiff's injury; their legal relationship eliminates the possibility of comparing their conduct for purposes of apportioning liability.

1

Review of the judgment of the Court of Appeals in an unpublished order filed August 17, 2016. Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed May 10, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*David R. Morantz*, of Shamberg, Johnson & Bergman, Chartered, of Kansas City, Missouri, argued the cause, and *Lynn R. Johnson* and *Paige L. McCreary*, of the same firm, and *Vito C. Barbieri*, of Barbieri & Associates, L.C., of Shawnee, were with him on the briefs for appellant.

*John J. Bursch*, of Bursch Law P.L.L.C., of Caledonia, Michigan, argued the cause, and *John J. Fogarty* and *Theresa Shean Hall*, of Manz Swanson Hall Fogarty & Gellis, PC, of Kansas City, Missouri, were on the briefs for appellee Johnny's Shawnee, Inc.

*Todd N. Thompson*, of Thompson Warner, P.A., of Lawrence, argued the cause, and *Sarah E. Warner* of the same firm, and *Erik Henry Nelson* and *Bradley R. Hansmann*, of Brown & James, P.C., of Kansas City, Missouri, were with him on the briefs for appellee Barley's Ltd.

*Richard W. James*, of DeVaughn James Injury Lawyers, of Wichita, and *Blake A. Shuart*, of Hutton & Hutton Law Firm, L.L.C., of Wichita, were on the brief for amicus curiae Mothers Against Drunk Driving.

*Will B. Wohlford*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, was on the brief for amicus curiae Kansas Trial Lawyers Association.

*J. Philip Davidson* and *Paul J. Skolaut*, of Hinkle Law Firm L.L.C., of Wichita, were on the brief for amicus curiae Kansas Restaurant and Hospitality Association.

*Lyndon W. Vix* and *Brian E. Vanorsby*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, were on the brief for amicus curiae Kansas Association of Defense Counsel.

*Jason R. Lane* and *Joseph Uhlman*, legal intern, of Newton, were on the brief for amicus curiae Kansas Emergency Medical Services Association.

The opinion of the court was delivered by

BILES, J.: Jeffrey D. Kudlacik suffered serious injuries in a two-vehicle collision with a drunk driver. He asks us to reconsider longstanding Kansas caselaw insulating commercial drinking establishments from liability for torts committed by their intoxicated patrons. We have done so and today reaffirm the common law under the principles of stare decisis. We hold the district court properly dismissed his lawsuit.

FACTUAL AND PROCEDURAL BACKGROUND

Michael Smith ran a red light at high speed through a Johnson County intersection and collided with Kudlacik's vehicle. Smith's blood alcohol content was 0.179. Kudlacik suffered extensive injuries.

Before the collision, Smith consumed alcoholic beverages at Johnny's Shawnee and Barley's Bar. Kudlacik sued Johnny's and Barley's for his injuries, alleging the bartenders continued to serve Smith even after they knew or should have known he was incapacitated by alcohol and a threat to himself and others. Kudlacik claimed the bartenders were either negligent or aided and abetted Smith's tortious conduct.

Johnny's and Barley's moved to dismiss the suit for failure to state a claim upon which relief can be granted under K.S.A. 2018 Supp. 60-212(b)(6). The district court agreed by quoting "'Kansas does not have a third-party action against vendors or dispensers of alcoholic beverages for harm done to the third party person by the person intoxicated from imbibing such beverages'" from *Bland v. Scott*, 279 Kan. 962, 973-94, 112 P.3d 941 (2005). Kudlacik appealed and the Court of Appeals summarily affirmed.

3

We granted Kudlacik's timely petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

STANDARD OF REVIEW

An appellate court reviews de novo whether a petition states a valid claim for relief. *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 767, 388 P.3d 84 (2017).

"When a defendant uses K.S.A. 2015 Supp. 60-212(b)(6) to challenge the legal sufficiency of a claim, the court must decide the issue based only on the well-pled facts and allegations, which are generally drawn from the petition. Courts must resolve every factual dispute in the plaintiff's favor when determining whether the petition states any valid claim for relief. Dismissal is proper only when the allegations in the petition clearly demonstrate that the plaintiff does not have a claim. [Citation omitted.] Likewise, appellate courts reviewing a district court's decision to grant a motion to dismiss will assume as true the well-pled facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper. [Citation omitted.]" 305 Kan. at 767-68.

NO CLAIM FOR NEGLIGENCE

In Kansas,

"At common law, and apart from statute, no redress exists against persons selling, giving or furnishing intoxicating liquor for resulting injuries or damages due to the acts of intoxicated persons, either on the theory that the dispensing of the liquor constituted a direct wrong or that it constituted actionable negligence. Since Kansas does

4

not have a dram shop act, the common-law rule prevails in Kansas." *Ling v. Jan's Liquors*, 237 Kan. 629, Syl. ¶ 3, 703 P.2d 731 (1985).

Our court repeatedly followed this rule. See, e.g., *Bland*, 279 Kan. at 973-74 (holding no wrongful death action against university and fraternity for supplying alcohol to minor who killed plaintiff while driving drunk); *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 273 Kan. 828, 837, 840, 47 P.3d 402 (2002) (holding no cause of action against college fraternity or its members for injuries to minor to whom members supplied alcohol); *Mills v. City of Overland Park*, 251 Kan. 434, 443, 837 P.2d 370 (1992) (holding no cause of action against vendor for minor patron's alcohol-related death); *Fudge v. City of Kansas City*, 239 Kan. 369, 375-76, 720 P.2d 1093 (1986) (holding no wrongful death action against commercial vendor that supplied liquor to drunken driver, and vendor's fault not to be compared with other tortfeasors'); *Ling*, 237 Kan. at 630 (no liability in personal injury action against out-of-state liquor store). Kudlacik asks us to revisit this precedent and consider the question anew.

> "The doctrine of stare decisis maintains that once a point of law has been established by a court, it will generally be followed by the same court and all courts of lower rank in subsequent cases when the same legal issue is raised. A court of last resort will follow that rule of law unless clearly convinced it was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent. [Citation omitted.]" *Miller v. Johnson*, 295 Kan. 636, 653-54, 289 P.3d 1098 (2012).

Stare decisis "'promote[s] system-wide stability and continuity by ensuring the survival of decisions that have been previously approved by a court.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004). Adhering to precedent is usually the wiser policy. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 613, 214 P.3d 676 (2009).

Kudlacik argues our common-law rule is outdated, creates an "inexplicable immunity" for alcohol vendors, and is bad public policy. These arguments have some merit but not enough to cause this court to upend the status quo. And even though we perceive some weakness with *Ling*'s initial rationale, we are not clearly convinced the decision itself was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come if we depart from it.

In *Ling*, the court applied the common-law rule to hold a pedestrian failed to state a claim against a commercial liquor vendor for damages she alleged resulted from the vendor negligently supplying alcohol to a minor. 237 Kan. at 641. The court declined to depart from the common-law rule because the "declaration of public policy is normally the function of the legislative branch of government." 237 Kan. at 640.

The *Ling* court reviewed dram shop liability's history in this state. It observed Kansas had statutes permitting civil damages for dram shop claims from territorial days until the late 1940s. But when the Legislature enacted comprehensive liquor regulation in 1949, it repealed the dram shop law. Since then, the Legislature criminalized liquor sales to minors and incapacitated persons—including those incapacitated by liquor consumption—and declined to adopt dram shop legislation proposed in 1984 and 1985. 237 Kan. at 637-39.

The court reasoned the Legislature would have "re-created a civil cause of action in favor of those injured as a result of a violation of the liquor laws" if it had "intended for there to be a civil cause of action." 237 Kan. at 640. Accordingly, the court held permitting violations of the criminal statutes to establish negligence per se "would subvert the apparent legislative intention." 237 Kan. at 639. It also reasoned,

6

"Whether Kansas should abandon the old common-law rule and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon what best serves the societal interest and need. Clearly, this is a matter of public policy which the legislature is best equipped to handle." 237 Kan. at 640.

To further justify its deference to the Legislature, the court noted "'[t]he imposition of a common law duty of care would create a situation rife with uncertainty,'" including social hosts' potential liability—difficulties in recognizing intoxication and predicting patrons' conduct, apportioning liability among several vendors, and determining "'[t]he correct standard of care'" and whether the tavern owner's liability should include the patron's intentional torts. 237 Kan. at 641 (quoting *Holmes v. Circo*, 196 Neb. 496, 504-05, 244 N.W.2d 65 [1976]). Later cases declined to overrule *Ling* and "continue[d] to hold that civil liability in this area is a public policy decision left to the Kansas Legislature." *Bland*, 279 Kan. at 971.

As mentioned, we perceive some flaws in *Ling*'s rationale. For one, we do not believe the predicted difficulties delineating common-law dram-shop liability's scope or standards of care remains a persuasive justification for deferring to the Legislature.

"It is said that the common law is susceptible of growth and adaptation to new circumstances and situations, and that the courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule . . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions." *Dimick v. Schiedt*, 293 U.S. 474, 487, 55 S. Ct. 296, 79 L. Ed. 603 (1935).

See also *Ling*, 237 Kan. at 643 (Lockett, J., dissenting) ("The common law is judge-made and judge-applied. It is not to be followed blindly and can be changed when conditions and circumstances require if the prior law is unjust or has become bad public policy.").

7

And contrary to the *Ling* court's decision to commit the traditional common-law rule's continuing viability to the Legislature, we have said:

"'The nature of the common law requires that each time a rule of law is applied, it be carefully scrutinized to make sure that the conditions and needs of the times has not so changed as to make further application of it the instrument of injustice. Whenever an old rule is found unsuited to present conditions or unsound, it should be set aside and a rule declared which is in harmony with those conditions and meets the demands of justice.'" *Steele v. Latimer*, 214 Kan. 329, 332-33, 521 P.2d 304 (1974) (quoting 15 Am. Jur. 2d, Common Law § 2, p. 797).

Another weakness in *Ling* comes in the proximate-cause-based rationale for the common-law rule, which has not kept pace with modern tort principles. Proximate cause is

"the cause that in a natural and continuous sequence, unbroken by any superceding cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act. Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. [Citations omitted.]" *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008).

Proximate cause is ordinarily a factual question to be resolved by the trier of fact. *Cullip v. Domann*, 266 Kan. 550, 556, 972 P.2d 776 (1999). But see *Hale*, 287 Kan. at 324 (noting when "all the evidence on which a party relies is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law").

"'There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must

8

prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable.' [Citation omitted.]" *Castleberry v. DeBrot*, 308 Kan. 791, 802-03, 424 P.3d 495 (2018).

Under this modern view, intervening and superseding causes that cut off liability for earlier negligence claims are still recognized in extraordinary cases. *Hale*, 287 Kan. at 323. But in the ordinary case, by adopting comparative fault, "Kansas has moved beyond the concept of proximate cause in negligence" in favor of a system in which "'"all or nothing" concepts are swept aside'" and "courts compare the percentages of fault of all alleged wrongdoers." *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, 268-69. 43 P.3d 799 (2002).

Indeed,

"'Most state and federal courts that have considered these issues since 1960 have reevaluated and rejected as patently unsound the rule that a seller cannot be held liable for furnishing alcoholic beverages to an intoxicated or minor patron who injures a third person on the grounds that sale or service is causally remote from the subsequent injurious conduct of the patron. A substantial majority have decided that the furnishing of alcoholic beverages may be a proximate cause of such injuries . . . .'" *Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 31, 986 S.W.2d 410 (1999).

See also *Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986) (rejecting common-law rule's proximate cause justification because proximate cause is a factual question for the jury except in the clearest cases susceptible to only a single inference); *Adamian v.*

*Three Sons, Inc.*, 353 Mass. 498, 501, 233 N.E.2d 18 (1968) ("Henceforth in this Commonwealth waste of human life due to drunken driving on the highways will not be left outside the scope of the foreseeable risk created by the sale of liquor to an already intoxicated individual.").

But despite these faults, we are not clearly convinced *Ling* was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from it. We remain unpersuaded that a duty of care runs from tavern owners to third-parties injured by their patrons after leaving the tavern owner's premises.

To be sure, courts in sister jurisdictions have dealt with this question in different ways. One view holds a commercial vendor of alcohol owes a duty of care because the intoxicated patron's negligent driving is a foreseeable consequence of the vendor's conduct. *Crespin*, 727 P.2d at 1102. Another considers statutes criminalizing vending liquor to minors and intoxicated persons sufficient to impose a duty of care. *Ono v. Applegate*, 62 Haw. 131, 137-38, 612 P.2d 533 (1980). The difficulty with these approaches stems from the general rule that "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another." Restatement (Second) Torts § 315 (1965); see also *Warr v. JMGM Group, LLC*, 433 Md. 170, 189-90, 70 A.3d 347 (2013) (declining to recognize common-law liability for negligently supplying liquor to intoxicated tavern patron because, absent a special relationship between the tavern and injured party, tavern owed no duty of care to the injured party).

Typically in Kansas, there is no duty to control a third person's conduct to prevent that person from causing physical harm to another unless a special relationship exists between the actor and the third person or between the actor and the other. *Nero v. Kansas State University*, 253 Kan. 567, Syl. ¶ 2, 861 P.2d 768 (1993). Therefore, to trigger the

tavern owner's duty to control the patron's conduct, the tavern owner must have a special relationship with either the patron or the injured third party. See *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 623-30, 971 P.2d 1169 (1999) (nursing staff at state hospital and hospital itself were not liable for damages sustained in car accident when involuntarily committed patient released on day pass steered vehicle into oncoming traffic, because no special relationship triggered duty to motorists); *Nero v. Kansas State University*, 253 Kan. 567, 580, 861 P.2d 768 (1993) (holding university-student relationship was not "special relationship" that imposed duty on university to protect assault victim from injury inflicted by fellow student); Restatement (Second) of Torts § 315.

Our caselaw hews closely to the special relationships enumerated in the Restatement, which do not include those at issue here. See *D.W. v. Bliss*, 279 Kan. at 738 ("We have, in all our special relationships/duty cases, followed the outlines of the Restatement, and to judicially create responsibility based on the marriage relationship would create a 'slippery slope' of unlimited possibilities for family liability that would have no practical stopping point."); Restatement (Second) of Torts §§ 316-20; accord *Cannizzaro v. Marinyak*, 312 Conn. 361, 367, 93 A.3d 584 (2014) (describing § 315 as supplying the parameters of a limited, public-policy exception to the general rule there is no duty to aid or protect another party).

Another problem emerges when trying to establish a duty of care through the statutes criminalizing certain liquor sales. In *Shirley v. Glass*, 297 Kan. 888, 897, 308 P.3d 1 (2013), the court held a violation of statutes criminalizing firearm sales to convicted felons may be used to establish a duty and a breach of that duty. It reasoned those statutes "fill in some of the elements of a negligent entrustment claim." 297 Kan. at 895. In particular, they could "establish that certain convicted felons are incompetent to possess firearms, and the violation of controls on how sales are to be carried out may

11

establish the defendant's constructive knowledge of the purchaser's incompetence." 297 Kan. at 895; cf. Restatement (Second) of Torts § 286 (describing when court may adopt legislative enactment or administrative regulation as "the standard of conduct of a reasonable man").

Kudlacik similarly points to the criminal statutes to contend the liquor sales posed an unreasonable risk of harm and the criminal statutes favor dram shop liability. But he goes beyond using the statutes to fill in the elements of negligence. He asks us to recognize a duty of care based on the statutes alone running from defendants to himself to control their patron's conduct for his protection. See *Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004) (negligence per se requires proof defendant violated statute, that violation caused plaintiff's damages, and that Legislature intended individual right of action for injury arising out of violation); *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 370, 819 P.2d 587 (1991) (violation of statute criminalizing failure to report suspected child abuse was not negligence per se because Legislature could have, but did not, specify statute intended to grant private right of action).

Since *Ling* our caselaw has reasoned the Legislature did not intend the statutes to support private causes of action, and the Legislature has acquiesced by its silence. *Bland*, 279 Kan. at 972 (reaffirming *Ling*'s holding that civil cause of action incorporating statutes criminalizing certain liquor sales would subvert legislative intent); see also *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015) (noting Legislature's long-term acquiescence in judicial interpretation of sentencing statute was strong indication that caselaw effected legislative intent). We are not clearly convinced *Ling*'s negligence per se determination was erroneous.

Likewise, we are not clearly convinced the common-law rule is rendered unsound by changing conditions and that more good than harm would come from departing from *Ling*. Kudlacik, defendants, and amici portray differing consequences from abrogating the common-law rule in conflicting lights. These range from decreasing drunk driving injuries on the positive end to commercial economic strains on the other—such as exposing vendors to uninsured liabilities.

Yet in the final analysis, the Legislature remains free to chart the public policy course that abrogates the common-law rule. And for many years, it has elected not to do so. See, e.g., *Bland*, 279 Kan. at 971 (noting "extremely narrow dram shop law" was considered by the 2004 Legislature but failed to pass); cf. *Manley v. Hallbauer*, 308 Kan. 723, 734, 423 P.3d 480 (2018) (refusing to recognize tort liability for rural landowners for natural conditions obscuring intersections based on statutes conferring road maintenance duties to government entities and Legislature's failure for more than 90 years to articulate policy other than that embodied in traditional common-law rule).

Kudlacik points out that since *Ling*, the Legislature has permitted licensed establishments to sell liquor by the drink, arguing this development alters its analysis. See L. 1987, ch. 182. But alcohol was available at private clubs and taverns as well as package liquor stores when *Ling* was decided. Drunk driving was then, as now, a serious problem. *Ling*, 237 Kan. at 638. So we decline to speculate on any correlation Kudlacik implies between liquor-by-the-drink's proliferation and the current extent of the drunk driving problem; or on what effect, if any, imposing vendor liability might have on combatting it. Moreover, our court has decided not to depart from *Ling* several times since liquor by the drink was enacted. See *Bland*, 279 Kan. at 969; *Prime*, 273 Kan. at 837.

13

Kudlacik argues our most recent decision, *Bland*, dealt only with social host liability and should not be viewed as a reaffirmation of *Ling*'s reasoning. But *Bland* unequivocally adhered to *Ling* with respect to all liquor vendor liability. See *Bland*, 279 Kan. at 972 ("[W]e . . . continue to hold that the decision to impose liability, and under what circumstances, upon the suppliers of alcohol for the torts of their intoxicated *patrons or guests* is a matter of public policy which the legislature is best equipped to handle." [Emphasis added.]).

Having carefully reevaluated our caselaw and its rationale, we decline to overrule *Ling*. Kudlacik fails to state a claim for negligence.

NO CLAIM FOR AIDING AND ABETTING

Kudlacik also argues he states a valid claim against Johnny's and Barley's on his aiding and abetting theory under Restatement (Second) of Torts § 876 (1979), notwithstanding whether *Ling* remains good law. We disagree because this rule applies only in narrow circumstances that are inapplicable here.

Under § 876,

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a) does a tortious act in concert with the other or pursuant to a common design with him, or

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

14

"(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

As to the "substantial assistance" requirement,

"The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered." Restatement (Second) of Torts § 876, Comment on Clause (b).

And this court has stated,

"§ 876 . . . is applied in Kansas when tortfeasors who act in concert engage in some affirmative conduct relating to the plaintiff's injury, but the legal relationship which exists among them eliminates the possibility of comparing their conduct for purposes of apportioning liability. Section 876 is not applied when the Kansas comparative negligence statute, K.S.A. 60-258a, requires imposition of individual liability for negligent torts based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages." *Yount v. Deibert*, 282 Kan. 619, Syl. ¶ 2, 147 P.3d 1065 (2006).

This rule establishes the contours of two or more parties' joint and several liability for a single tort. *Yount*, 282 Kan. at 633. Under § 876, if Johnny's and Barley's conduct amounts to participating in Smith's tort—negligently operating a vehicle—they might be jointly and severally liable with Smith. See *Woods v. Cole*, 181 Ill. 2d 512, 519, 693 N.E.2d 333 (1998) ("[A] tortfeasor who acts in concert with other individuals in causing a plaintiff's injury is held jointly and severally liable for that injury because the tortfeasor is legally responsible for the actions of the other individuals.").

15

Kudlacik analogizes his facts to *Simmons v. Homatas*, 386 Ill. App. 3d 998, 898 N.E.2d 1177 (2008). There, the defendant substantially assisted the tortfeasor in negligently operating a vehicle when it encouraged the tortfeasor to drink hard liquor steadily for two hours, evicted him from its premises, placed him in his vehicle's driver's seat, and demanded he leave. 386 Ill. App. 3d at 1008-09. The court distinguished this from a fact pattern in which there was no liability—a repair shop returning a repaired vehicle to an intoxicated patron. The key distinction for liability purposes under § 876 was that there was no evidence the repair shop encouraged the patron to drive the car. 386 Ill. App. 3d at 1007-08.

Kudlacik does not allege facts showing either defendant knew Smith's conduct constituted a breach of duty or that they substantially assisted Smith in his negligent driving. He alleges no facts approaching those in *Simmons*. Kudlacik fails to state a claim under Restatement § 876.

Affirmed.