428 A.2d 168

**COMMONWEALTH of Pennsylvania,**

v.

**Paul H. RITTLE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 11, 1980.

Filed April 3, 1981.

George G. Mahfood, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, submitted a brief on behalf of Commonwealth, appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

CAVANAUGH, Judge:

The issue on appeal is whether the trial court was in error in refusing to instruct the jury on the defense of self-defense. We find that under the evidence the appellant was entitled to have this issue presented to the jury and, therefore, we reverse the judgment of sentence and grant a new trial.

■ It is clear that if there is evidence from any source that a defendant acted in self-defense, that the defendant is not only entitled to have the issue presented to the jury but in addition is entitled to a charge that the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *See Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645; *Commonwealth v. Flagg*, 266 Pa.Super. 508, 405 A.2d 934 (1979); *Commonwealth v. Hetherington*, 477 Pa. 562, 385 A.2d 338 (1978); *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977); *Commonwealth v. Webster*, 490 Pa. 322, 416 A.2d 491 (1980); *Commonwealth v. Terrell*, 276 Pa.Super. 136, 419 A.2d 133 (1980).

Therefore, we must examine the evidence to see if there is evidence "from any source" that appellant Wilmer was acting in self-defense. The victim in this incident, Pete Palsitevas, testified that he was in a parking lot in his van and saw the appellant driving his own vehicle. The appellant stopped his vehicle, got out, approached a "bunch of people" and hit a girl with his fist and returned to his car (both appellant and the girl denied that she was struck in their testimony). Thereafter, Palsitevas got out of his van and stopped the appellant's vehicle. He then testified:

Q  Now, Pete, you said you went over to his car?
A  Yes.

Q  Was his window rolled up?

A  At the time, yes.

Q  And what happened when you got to the car?

A  Well, I stopped him and he rolled down the window. I told him—I said, 'Get out of the car.' 'Why don't you pick on somebody your own size?'

Q  Now, Pete, were those your exact words?

A  Yes, sir.

Q  And what tone of voice were you saying this to him?

A  Kind of stiff, like, you know, like I meant it.

Q  And were you mad?

A  Yes, I was.

N.T., page 19.

At that point he stated that Rittle reached in the back of his vehicle and then displayed a gun which he pointed at Palsitevas, who stated that he froze and then proceeded to walk away. Rittle's version of the approach by Palsitevas was only slightly different:

Q  Paul, did he come over to your car?

A  After I backed up, he followed me right down there.

Q  Did you have words with him?

A  Yes, he told me to get out of my car and that he was going to beat the shit out of me.

Q  Were those his words?

A  Yeah, those were his exact words. He told me that he was going to beat the shit out of me. I was very sick and I weighed about 120 pounds—

Q  When were you sick?

A  When my house burned about three weeks before that. I had the flu or something, I don't know what it was, but even the police commented on that, that I was awfully skinny and I told them that I had been sick.

Q  Paul, when Peter Palsitevas told you to get out of the car, how did you feel?

A  I was not going to get out of the car. I was sick, I was sweating that night and I had somewhat of a fever. I was scared.

Q  Was he bigger than you?

A  Yeah, much bigger.

Q  Were you afraid of him?

A  I was scared, yeah. He was real angry.

N.T., pages 153–154.

█  Rittle admitted reaching for and pointing the gun at Palsitevas. The jury, after hearing this evidence, returned a verdict of guilty of simple assault. Appellant argues that based upon the evidence he was entitled to a charge on the use of force in self-protection. The statute provides, 18 Pa.C.S.A. § 505(a):

(a) *Use of Force justifiable for protection of the person.*—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

"Unlawful force" is defined as, 18 Pa.C.S.A. § 501:

Force, including confinement, which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort or would constitute such offense or tort except for a defense (such as the absence of intent, negligence, or mental capacity; duress; youth; or diplomatic status) not amounting to a privilege to use the force. Assent constitutes consent, within the meaning of this section, whether or not it otherwise is legally effective, except assent to the infliction of death or serious bodily injury.

We agree that the jury could conclude that Palsitevas as the initial aggressor attempted by physical menace to put appellant in fear of imminent serious bodily injury. Recently, our court found that similar conduct was sufficient to amount to simple assault. In *Commonwealth v. Diamond,*

268 Pa.Super. 326, 408 A.2d 488 (1979), the defendant was convicted of simple assault when he ran up to the victim's car after the victim had swerved to avoid hitting him and gripped the door handle of the victim's car.[1]

Under these circumstances, we conclude that appellant was entitled to an instruction on the defense of use of force in self-protection.

Judgment of sentence reversed and new trial granted.

---

1.  Interestingly enough in *Diamond* where the facts are very similar to the present case, the person in the vehicle also responded to the aggression by brandishing a pistol. It was the initial aggressor who was charged in *Diamond*, not the person in the car.