No. 97,323

STATE OF KANSAS, *Appellee,* v. RODNEY MAURICE HENDRIX, *Appellant.*

(218 P.3d 40)

Opinion filed October 23, 2009.

*Matthew J. Edge,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Elizabeth J. Dorsey*, legal intern, *Phill Kline*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: The issue presented is whether a defendant must use actual force to justify a jury instruction on self-defense. We answer this question "yes." Accordingly, the judgment of the Court of Appeals is affirmed.

## FACTS

The facts necessary to our determination are straightforward. While visiting their mother in her hospital room, Rodney Maurice Hendrix and his sister, Charlotte Brown, had a heated confrontation. According to Brown, her brother entered the room and angrily approached her. Hendrix "shoved" a piece of paper in her face so severely that when he pulled the paper away it showed traces of her makeup. Brown testified that Hendrix backed away, then again came toward her and pulled a knife. He then threatened to kill Brown if she returned to their mother's home where Hendrix lived and where Brown had been staying during her visit. According to Brown, Hendrix then left.

Hendrix's story was considerably different. According to him, he entered the hospital room and knelt by his mother while holding a piece of paper that he wanted to show her. He testified that Brown approached him and stuck her hand in his face while loudly cussing him. Hendrix claimed he was afraid that Brown would slap him. He testified that to get her to back away, he told her he would "break her neck." One fact the siblings do agree upon is the complete absence of physical force by either one.

Hendrix was charged with the crimes of criminal threat and aggravated assault. The trial court denied his request for a self-defense jury instruction on the basis of insufficient evidence. Specifically, it ruled that Hendrix did not have a reasonable belief that his conduct was necessary to defend himself against the use of imminent force by his sister. The jury then convicted Hendrix of making a criminal threat under K.S.A. 21-3419(a) ("any threat to . . . [1] [c]ommit violence communicated with intent to terrorize

another, or . . . in reckless disregard of the risk of causing such terror") and misdemeanor assault under K.S.A. 21-3408 ("intentionally placing another person in reasonable apprehension of immediate bodily harm").

The Court of Appeals held that Hendrix was not entitled to a self-defense instruction as a matter of law because no physical force was actually used. *State v. Hendrix*, No. 97,323, unpublished opinion filed September 19, 2008. The panel cited the statute and the standard jury instruction on self-defense: K.S.A. 21-3211 (Furse 1995) and PIK Crim. 3d 54.17. Accordingly, its rationale eliminated the need to consider the trial court's determination of insufficient evidence of Hendrix's reasonable belief that his conduct was necessary to defend himself against the threat of imminent force.

We granted Hendrix's petition for review under K.S.A. 22-3602(e).

## ANALYSIS

We recently set forth our standard of review for determining when a defendant is entitled to a jury instruction on his or her theory of defense in *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008):

" 'A defendant is entitled to instructions on the law applicable to his or her theory of defense if there is evidence to support the theory. However, there must be evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory.' "

The statute concerning Hendrix's theory of self-defense, K.S.A. 21-3211 (Furse 1995), in turn provides as follows:

"A person is justified in the *use of force* against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's use of unlawful force." (Emphasis added.)

We begin by acknowledging that the fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. *Steffes v. City of Lawrence*, 284 Kan. 380, Syl. ¶ 2, 160 P.3d 843 (2007). The intent of the legislature is to be derived in the first place from the words used. *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 460, 124 P.3d

57 (2005). In determining whether a statute is open to construction or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous language. *Perry v. Board of Franklin County Comm'rs*, 281 Kan. 801, Syl. ¶ 8, 132 P.3d 1279 (2006); see *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 822, 104 P.3d 378 (2005).

"When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there." *Steffes*, 284 Kan. 380, Syl. ¶ 2.

We agree with the State and the Court of Appeals panel that the phrase "use of force" contained in K.S.A. 21-3211 (Furse 1995) should be given its ordinary meaning—and that means actual force. "Use of force" does not mean "threat of force" or "display of force" or "presentation of force" or any interpretations which similarly dilute the actual use of force, *i.e.*, physical contact.

Even if the statutory language were somehow ambiguous and we looked to canons of construction to assist in determining the meaning of "use of force," we note that the legislature has been clear in other contexts to distinguish between the actual use of force and diluted variations. For example, the legislature has explicitly defined robbery as the taking of property from the person or presence of another either "by *force* or by *threat* of bodily harm" to any person. (Emphasis added.) K.S.A. 21-3426. The legislature has made the same type of explicit distinctions in the crime of kidnapping. It defines kidnapping as a taking or confining of another person "accomplished by *force, threat* or deception." (Emphasis added.) K.S.A. 21-3420.

Finally the legislative distinction is again clearly made in K.S.A. 21-3213 which concerns defense of property other than a dwelling. It provides:

"A person who is lawfully in possession of property other than a dwelling is justified *in the threat or use of force* against another for the purpose of preventing or terminating an unlawful interference with such property. Only such degree of

*force or threat* thereof as a reasonable man would deem necessary to prevent or terminate the interference may intentionally be used." (Emphasis added.)

Hendrix's take on the statutes would make the language of clear distinction superfluous. In short, there would be no need for the legislature to discern, on the one hand, "threats" or implied force from actual "force" and "use of force" on the other. See *Hawley v. Kansas Department of Agriculture*, 281 Kan. 603, Syl. ¶ 9, 132 P.3d 870 (2006) (there is a presumption that the legislature does not intend to enact useless or meaningless legislation).

Hendrix relies upon language contained in another unpublished Court of Appeals decision, *State v. Kincade*, No. 94,657, filed August 4, 2006. There the panel stated:

"In the present case, the defendant offered no evidence which, if believed, would have supported a reasonable belief the defendant or another person was in imminent danger of the use of unlawful force. The use of force *or the threat of force* to protect another person is a defense only when such force is necessary to protect the third party from an aggressor's imminent use of force. K.S.A. 21-3211. The evidence in this case provides no basis from which to conclude that any person, other than the victim, was placed in imminent danger of the use of unlawful force justifying the defendant's protective use of force in response. The record simply fails to support an instruction on self-defense or defense of another." (Emphasis added.) Slip Op. at 4.

The italicized words upon which Hendrix relies are contrary to the plain language of the statute. More specifically, the *Kincade* panel inappropriately read into the statute words not found there. *Steffes*, 284 Kan. 380, Syl. ¶ 2. To the extent that *Kincade* is inconsistent with the holding of the instant case, it is overruled.

Hendrix primarily argues policy considerations. Among other things, he points out the alleged absurdity in *denying* self-defense to a defendant (purportedly like himself) who can defuse a violent situation with the mere threat of force, but then in *granting* the defense to one who instead chooses to actually apply force. He argues the statute—or at least our interpretation of it—promotes violence because defendants wanting to ensure their entitlement to the defense will use actual force instead of words.

We agree with the worthy goal of promoting de-escalation, *e.g.*, defusing a violent episode with some well chosen words. However,

policy making is the province of the legislature. See *Bland v. Scott*, 279 Kan. 962, 966, 112 P.3d 941 (2005) (" 'declaration of public policy is normally the function of the legislative branch of government' "); see also *State v. Prine*, 287 Kan. 713, 737, 200 P.3d 1 (2009) ("Of course, the legislature, rather than this court, is the body charged with study, consideration, and adoption of any statutory change that might make [the statute] more workable."). It alone must decide whether to pursue this goal in the self-defense statute. Consequently, it alone must decide to make the explicit distinctions there as it has in the other statutory enactments mentioned earlier.

Such an approach would also be consistent with the ones chosen by a number of other states in their self-defense statutes. See, *e.g.*, Ga. Code Ann. § 16-3-24.2 (2007) ("A person who uses threats or force . . . shall be immune from criminal prosecution therefor . . . ."); Tex. Penal Code Ann. § 9.04 (West 2003) ("The threat of force is justified when the use of force is justified by this chapter."); Wisc. Stat. § 939.48(1) (2005) ("A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person.").

For all of these reasons, the judgment of the Court of Appeals is affirmed.

\* \* \*

DAVIS, C.J., dissenting: Under Kansas law, "[a] person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such force is necessary to defend himself or another against such aggressor's imminent use of unlawful force." K.S.A. 21-3211(a) (Furse 1995); accord *State v. Shortey*, 256 Kan. 166, 173, 884 P.2d 426 (1994). The majority determines that the plain language "use of force" means only the exertion of physical force. Because I find the language of K.S.A. 21-3211 (Furse 1995) to be ambiguous and because I conclude that the legislature reasonably intended to incor-

porate both physical and constructive force within the self-defense statute, I cannot join in the majority opinion and must dissent.

Consider the following example. One evening, a large man approaches a woman in a menacing manner and threatens, "I'm going to hurt you!" Worried for her life, the woman takes a gun from her purse, points it at her assailant, and says, "Stay where you are!" The assailant turns and runs.

Assume for the sake of the example that the woman is subsequently charged with aggravated assault. While she successfully repelled her attacker with constructive force, she is not entitled to a self-defense instruction according to the majority opinion. Had she actually shot her assailant, she may very well have been entitled to that instruction under that same rationale. This bizarre result cannot have been intended by the legislature in its enactment of K.S.A. 21-3211 (Furse 1995).

Although the majority recognizes the incongruity in this outcome from a policy perspective, it finds that its interpretation of K.S.A. 21-3211 (Furse 1995) is demanded by the plain language of that statute. I disagree that the plain language dictates such a result.

K.S.A. 21-3211(a) (Furse 1995) provides that, in certain instances, the "use of force" is justified when defending oneself or others. The statute does not define the terms "use" or "force." In my opinion, the failure to define these terms creates an ambiguity in the statute that must be resolved through statutory construction.

Notably, the majority assumes that the term "force" includes only "physical force." See slip op. at 5-6 (indicating that the "ordinary meaning" of "force" is "actual [or physical] force"). This interpretation is not based on the plain language of the statute, as K.S.A. 21-3211 (Furse 1995) is silent as to the types of force it encompasses. The generic term "force" may include both "actual force"—that is, physical force—and "constructive force"—that is, the threat of actual force. See Black's Law Dictionary 717 (9th ed. 2009) (distinguishing *actual force* ["(f)orce consisting in a physical act"] from *constructive force* ["(t)hreats and intimidation to gain control or prevent resistance"]).

Likewise, the majority opinion interprets the term "use" in K.S.A. 21-3211 (Furse 1995) to mean only *the exertion of physical*

*force.* The majority reaches the blanket conclusion that " '[u]se of force' does not mean 'threat of force' or 'display of force' or 'presentation of force' or any interpretations which similarly dilute the actual use of force, *i.e.*, physical contact." Slip op. at 6. But contrary to the majority's interpretation, "use" is a general term that may include all of those other actions (threat, display, presentation, etc.). See Black's Law Dictionary 1681 (9th ed. 2009) (defining "use" in general terms as "[t]he application or employment of something" and listing 34 examples where "use" carries different meanings in the legal context).

It is a cardinal principle of statutory interpretation that a statute should not be read to add language that is not found in its text. *State v. Bryan,* 281 Kan. 157, 159, 130 P.3d 85 (2006). Absent a definition of the terms "use" and "force" in K.S.A. 21-3211 (Furse 1995), we are left with the task of ascertaining the intent of the legislature in its including those undefined terms in the statute. In order to reach the majority's conclusion that it may resolve the question before us under the statute's plain language, one must first *assume* that the legislature intended to exclude constructive force to limit "force" to "physical force" only. The same is true if one limits "use" to describe only the "exertion of physical force." Contrary to the majority's conclusion, the language used in K.S.A. 21-3211 (Furse 1995) is not necessarily clear and, without some assumptions on the part of the reader, does not exclude constructive force from the ambit of self-defense.

When the language of a statute leaves the reader generally uncertain as to which of two or more reasonable interpretations is proper—as is the case here—courts must resort to maxims of construction. See *Weber v. Tillman,* 259 Kan. 457, 476, 913 P.2d 84 (1996). Most importantly, when ascertaining legislative intent, courts must interpret statutes in a reasonable manner as long as such an interpretation is consistent with a statute's language. *Winnebago Tribe of Nebraska v. Kline,* 283 Kan. 64, 77, 150 P.3d 892 (2007).

The practical result of the majority's interpretation of "use of force" in K.S.A. 21-3211 (Furse 1995)—that a self-defense instruction is only warranted when actual physical force has been ex-

erted—is to interpret the ambiguity in favor of physical violence. Instead of using words to deter harmful conduct, persons would be encouraged to escalate a situation by committing some kind of physical act that would justify acting in self-defense under the law. In the example described above, the woman would be encouraged to shoot her assailant instead of merely threatening him. As Hendrix argues in his petition for review, this result is truly "absurd."

The majority attempts to bolster its interpretation by turning to other examples in our statutes where the legislature has apparently differentiated between "threat" and "force." I do not find these distinctions persuasive in light of its unreasonable interpretation in favor of escalating already violent situations. Instead, I would resolve the ambiguity in favor of nonviolence and de-escalation.

I find the self-defense definition included in the Model Penal Code to be a particularly helpful example of a resolution of the question before us. Model Penal Code § 3.04(1) (1995) provides that "the *use of force upon or toward another person* is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." (Emphasis added.) Several states have adopted the exact language of the model code in their definition of self-defense. See Del. Code Ann. tit. 11, § 464 (2007); Guam Code Ann. tit. 9, § 7.84 (2008); Hawaii Rev. Stat. § 703-304 (2007); Neb. Rev. Stat. § 28-1409 (2003); N.J. Stat. Ann. § 2C:3-4 (West 2005); 18 Pa. Cons. Stat. Ann. § 505 (Purdon 1998).

Two important aspects of the model code are worth noting. First, the model code employs the same phrase—"use of force"—that is used in K.S.A. 21-3211 (Furse 1995). It does not distinguish between threats and physical force, nor does it specifically define "force" in that context. Second, the model code indicates that one may use force "upon or toward" another. In other words, the "use of force" does not necessarily require some physical force exerted on another; rather, it can involve force directed toward another to de-escalate a violent situation. Put simply, the Model Penal Code envisions self-defense to include constructive force.

The cases decided by the states employing the Model Penal Code definition are consistent with this interpretation. For example, in *Com. v. Rittle,* 285 Pa. Super. 522, 428 A.2d 168 (1981), the Pennsylvania Superior Court reversed and remanded an assault conviction for a new trial because the trial court failed to provide a self-defense instruction. In *Rittle,* the victim, who was much larger then the allegedly sickly defendant, approached the defendant's car and threatened to beat up the defendant. The defendant reached into his back seat, produced a gun, and pointed it at the victim; the victim walked away. No shots were fired. The trial court refused to charge the jury on self-defense and the defendant was found guilty of simple assault. On appeal, however, the court held that the jury could have concluded that the victim was the initial aggressor who attempted to place the defendant in fear of imminent serious bodily injury and such could amount to simple assault. Therefore, the defendant was entitled to an instruction on the use of self-defense. 285 Pa. Super. at 525-26.

It is true that K.S.A. 21-3211 (Furse 1995) is not identical to the Model Penal Code's self-defense definition. Instead of stating that "the use of force *upon or toward* another person is justifiable" in limited circumstances (as Model Penal Code § 3.04[1] [1995] provides), K.S.A. 21-3211(a) (Furse 1995) states that "[a] person is justified in the use of force *against* an aggressor" when the other conditions of the statute are met. (Emphasis added.) I do not find this difference to be significant, however. The term "against" encompasses the same behavior that may be directed "upon or toward" another. Thus, it is consistent with the model code and likewise does not exclude from its ambit the use of constructive force in self-defense.

Statutes should be interpreted in a reasonable manner as long as such an interpretation is consistent with a statute's plain language. *Winnebago Tribe of Nebraska,* 283 Kan. at 77. Because it would be entirely consistent with the language of K.S.A. 21-3211 to interpret "use of force" to include both constructive and actual force, I would conclude that the legislature intended to include constructive force within its definition of self-defense. Thus, in the hypothetical example described above between the man and the

woman, I would conclude that the woman's use of force to repel her assailant by pointing the gun fits the legislature's definition of self-defense.

LUCKERT, J., joins in the foregoing dissent.