NOT DESIGNATED FOR PUBLICATION

No. 126,281

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KONGKEO KOULABOUD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT PETERSON, judge. Submitted without oral argument. Opinion filed July 3, 2025. Affirmed in part and reversed in part.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

No appearance by appellee.

Before CLINE, P.J., ARNOLD-BURGER and GARDNER, JJ.

CLINE, J.: Kongkeo Koulaboud appeals his convictions for attempted second-degree murder and aggravated assault with a deadly weapon. On appeal, he contests the sufficiency of the evidence on his aggravated assault conviction, claims prosecutorial error because the prosecutor argued a different assault theory than what was charged, and claims the district court erred in denying his motion for a continuance and in instructing the jury.

After reviewing the record, we find the district court did not err in denying Koulaboud's continuance motion and his request for a voluntary intoxication instruction

1

and we find sufficient evidence supports his assault conviction. But we find the prosecutor erred and, since the State failed to file a brief, we must find that error is reversible since the State bears the burden of proving Koulaboud was not prejudiced by that error. We therefore reverse Koulaboud's aggravated assault conviction and remand this charge for a new trial. But we affirm his conviction for attempted second-degree murder.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an incident which occurred on December 8, 2019. At the time, Koulaboud was living in a trailer house located in Jose Chavez' backyard. While Chavez and a friend, Frank Mattich, were working outside on Chavez' car, Koulaboud came out onto the porch and started yelling at Chavez. Koulaboud asked who put oil on his clothing in the laundry, noting some had gotten on his shirt. He waved a machete and said he was going to kill Chavez, repeating this threat two or three times. Chavez testified that he became afraid of Koulaboud due to this behavior, so he asked Mattich to call the police. But Mattich testified that Chavez did not ask him to call the police but instead Mattich did so on his own once he saw Chavez on the ground.

At some point, Koulaboud went back inside the house and yelled at Chavez to come inside and see that someone had poisoned his clothes. After Chavez did not follow Koulaboud into the house, Koulaboud came back outside and started hitting Chavez with a stick "very hard," telling Chavez he was going to kill him. Chavez tried to run away, but Koulaboud hit him and he fell. Chavez said everything happened very fast, so he was not sure if he fell onto his side or back.

Mattich saw Koulaboud hitting Chavez while Chavez was on the ground, trying to protect his head. At some point the stick disappeared and Mattich saw Koulaboud put his hand inside his jacket and pull out a hammer. Mattich testified he saw Koulaboud swing

2

the hammer and hit Chavez twice in the right knee. Koulaboud then tried to hit Chavez in the head. Mattich said Chavez was on the ground protecting his head with his arms and crying when Koulaboud was swinging the hammer at his head. Chavez said Koulaboud was angry "like a demon" and screaming so much that Chavez could not understand him. One of the investigating officers testified Mattich told the officer that Koulaboud hit Chavez with the hammer, but the officer said Chavez did not believe he was hit with the hammer. However Chavez claimed at trial he was hit with the hammer and did not remember telling the officer he was not.

Mattich said the hammer flew out of Koulaboud's hand when he tried to hit Chavez in the head. Chavez did not see when Koulaboud lost the hammer but said Koulaboud suddenly just took off running when the police arrived. Mattich followed him, and law enforcement apprehended Koulaboud near the scene.

A day after the altercation, the State charged Koulaboud with attempted second-degree murder and aggravated assault with "a hammer and a wooden stick." About 12 days before the jury trial was set to begin, the State provided reports and documents to Koulaboud regarding Chavez' medical treatment. Consequently, the day before trial, Koulaboud moved to continue the trial so he could locate an expert to examine Chavez' medical records and prepare his defense. Koulaboud renewed this motion after the State's case-in-chief at trial. The court found that because the degree of Chavez' injury was not "very material" to Koulaboud's guilt with respect to the charged offenses, it denied both motions.

During opening statements at trial, the State argued, "It's the State's allegations the machete was or can be used as a deadly weapon and therefore he's charged with aggravated assault for threatening or causing Mr. Chavez to be in reasonable apprehension." At the jury instruction conference, the State requested to add the word machete to the aggravated assault instruction. The court denied the request, explaining

3

that it used the words "a hammer and/or a wooden stick" in the instructions because that was how the State charged Koulaboud.

The jury convicted Koulaboud of both charges, and the district court sentenced him to a 113-month prison term. This appeal follows.

REVIEW OF KOULABOUD'S APPELLATE CHALLENGES

I. *Did the State present sufficient evidence to convict Koulaboud of aggravated assault?*

When examining the sufficiency of the evidence in a criminal case, an appellate court will review all the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts should: (1) "'not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations,'" and (2) "only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022). This court will only reverse a guilty verdict "in rare cases" when "the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." 316 Kan. at 350.

Koulaboud argues the State presented insufficient evidence for a jury to convict him of aggravated assault. To convict an individual of a crime, the State must prove to the trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under K.S.A. 21-5412(b)(1), the State was required to prove that Koulaboud knowingly placed Chavez in reasonable apprehension of immediate bodily harm with a deadly weapon.

Koulaboud notes the State's theory at trial was that the deadly weapon used to commit the aggravated assault was the machete, not the stick or hammer. As a result, he contends the State failed to prove Koulaboud committed aggravated assault with a hammer or wooden stick. He says Chavez did not testify he was afraid of Koulaboud's conduct with the hammer or wooden stick and the State put on no evidence that the hammer or wooden stick were the deadly weapons used to commit the offense of aggravated assault.

While Koulaboud is correct that the State's theory did not match the charge, we review the *evidence* to determine whether it was sufficient to support the charge—not the State's *interpretation* of the evidence. That is, regardless of what the State attempted to prove, our concern is whether a reasonable fact-finder could conclude beyond a reasonable doubt that Koulaboud was guilty of the convicted offense—aggravated assault with a hammer or wooden stick. See *State v. Thach*, 305 Kan. 72, 80, 378 P.3d 522 (2016).

When answering this question, we are not limited to direct evidence, as Koulaboud suggests. See *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016) ("[A] conviction of even the gravest offense can be based entirely on circumstantial evidence."). So the fact that Chavez did not specifically say he feared Koulaboud's use of the hammer or the stick is not dispositive. Our courts have found circumstantial evidence can support a finding that the victim was afraid. See *State v. Brown*, 300 Kan. 565, 584, 331 P.3d 797 (2014); *State v. Stalter*, No. 126,741, 2024 WL 4730863, at *2 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. ___ (March 31, 2025); *State v. Carbaugh*, No. 108,767, 2013 WL 5303553, at *3 (Kan. App. 2013) (unpublished opinion); see also *State v. Lessley*, 271 Kan. 780, 789-90, 26 P.3d 620 (2001) (aggravated assault conviction upheld based on independent evidence of victim's fear despite victim testifying she was not afraid).

The victim in *Stalter* provided the jury with conflicting evidence on whether he had reasonable apprehension of immediate bodily harm. 2024 WL 4730863, at *2-3. The victim told the jury he was not scared of Stalter but also explained he was "'concerned [he] might get stuck with the knife.'" 2024 WL 4730863, at *3. Even with the inconsistent testimony, this court held there was sufficient circumstantial evidence to establish the victim was in reasonable apprehension of immediate bodily harm despite testifying he was not scared. It found—because the victim physically left the house when Stalter threw a knife in the sink, he waited for law enforcement outside the house, the incident made the hairs on the back of his neck stand up, he was hesitant to go back into the house and sleep while Stalter was there, and Stalter had never exhibited this type of behavior before—there was sufficient circumstantial evidence to support the aggravated assault conviction. 2024 WL 4730863, at *3; see also *State v. Vontress*, No. 89,241, 2004 WL 944017, at *4-5 (Kan. App. 2004) (unpublished opinion) (finding that a defendant's conviction for aggravated assault can be supported by circumstantial evidence).

Here, Chavez did not provide conflicting evidence about whether he was afraid when Koulaboud used the hammer or stick—he just did not specifically say he was. But circumstantial evidence showed Chavez was in reasonable apprehension of bodily harm with a hammer and/or wooden stick. For instance, when Koulaboud reemerged from the house with the stick, Chavez said he came directly at him and hit him with the stick "very hard." Chavez said Koulaboud was angry "like a demon" and told Chavez he wanted to kill him. Chavez then tried to run away, but he fell when Koulaboud hit him again. After falling, Chavez tried to stop Koulaboud's attack and protect himself by putting his leg out to block Koulaboud. Also, Mattich said Chavez was on the ground protecting his head with his arms and crying when Koulaboud was swinging the hammer at his head. Chavez added that he did not know where the stick or hammer went after the attack because he was laying on the ground "giving thanks" that Koulaboud did not kill him. And when an officer questioned Chavez at the scene, he said Koulaboud tried to kill him. Chavez also

told the officer he was attacked with a stick and a hammer. Given this record, we find sufficient evidence supports Chavez' apprehension from the hammer and/or stick.

Koulaboud next argues the State failed to show a hammer or wooden stick were deadly weapons. In *State v. Jackson*, No. 88,574, 2003 WL 22387744 (Kan. App. 2003) (unpublished opinion), this court surveyed caselaw and succinctly stated the test for whether an object is a deadly weapon under Kansas' aggravated assault statute:

> "[U]nlike the aggravated battery statute, the deadly nature of a weapon used in an assault is viewed from the perspective of a reasonable person under the same circumstances as the alleged victim. Under the aggravated assault statute, the jury in this case was required only to believe that a reasonable person placed in the position of the officers would have suffered apprehension from the defendant's apparent ability to immediately harm them with what reasonably appeared to be a deadly weapon. [Citations omitted.]" 2003 WL 22387744, at *1.

In essence, the "test for determining whether something is a deadly weapon may present an objective or subjective component." *State v. Lowe*, 317 Kan. 713, 719, 538 P.3d 1094 (2023).

Here, there is no question that a hammer, when objectively viewed from the perspective of a reasonable person under the same circumstances as Chavez, would qualify as a deadly weapon. "Although in an ordinary context, a hammer is usually considered a tool, not a weapon, in many instances assailants have used hammers to perpetrate a deadly attack." *State v. Beard*, 273 Kan. 789, 803, 46 P.3d 1185 (2002); see, e.g., *State v. Brown*, 272 Kan. 809, 810-11, 37 P.3d 31 (2001); *State v. Livingston*, 272 Kan. 853, 35 P.3d 918 (2001); *State v. Holmes*, 272 Kan. 491, 492, 33 P.3d 856 (2001); *State v. White*, 263 Kan. 283, 294, 950 P.2d 1316 (1997); *State v. Moncla*, 262 Kan. 58, 60, 936 P.2d 727 (1997).

The evidence also shows Chavez subjectively believed the hammer was a deadly weapon which Koulaboud used to attempt to harm him. Mattich testified that when Koulaboud was swinging the hammer at Chavez, Chavez was on the ground trying to protect his head with this arms and crying. And Chavez testified he was grateful Koulaboud did not hit him in the head with the hammer because Koulaboud would have killed him if he had. While the evidence to support a finding that the wooden stick was a deadly weapon is less clear, since the State charged Koulaboud with either the hammer or the stick as the deadly weapon, our finding that the evidence supported the hammer as a deadly weapon is sufficient to support the charge.

We therefore conclude the State presented sufficient evidence to convict Koulaboud on his aggravated assault charge based on Koulaboud's conduct with the hammer and affirm that conviction.

II. *Did the prosecutor err by arguing the machete was a deadly weapon when the State charged Koulaboud based on his conduct with a hammer and wooden stick?*

Koulaboud next contends the prosecutor misstated the law by arguing a different offense than the one Koulaboud was charged with. Appellate courts use a two-step process to evaluate claims of prosecutorial error. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022). First, we must determine whether the prosecutor erred. If so, we then consider whether that error prejudiced the jury against the defendant and denied the defendant a fair trial. See *State v. Crawford*, 300 Kan. 740, 744, 334 P.3d 311 (2014). But prosecutorial error is harmless if the State can demonstrate beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Koulaboud argues the prosecutor committed reversible error when he argued in opening statements that the deadly weapon Koulaboud used to commit the aggravated

assault was the machete. We agree. It was an error for the prosecution to posit a theory that the machete was the deadly weapon when they did not do so in the charging documents. "The charging instrument must set out the specific offense alleged against the defendant in order to inform the defendant of the nature of the accusation against him or her." *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009). "That notice then allows for development of the best defense to meet that accusation and, ideally, insulate the defendant from the risk of a conviction based on facts not contemplated in the accusation." *State v. Gleason*, No. 125,156, 2024 WL 392001, at *8 (Kan. App. 2024) (unpublished opinion).

As Koulaboud admits, the State could have amended its complaint before the verdict to include the machete as the or one of the deadly weapons Koulaboud used to commit aggravated assault. K.S.A. 22-3201(e). But it did not. Instead, it unsuccessfully sought to add the machete to the jury instructions describing the charge. This would not have cured the problem and the district court was correct to require that the jury instructions match the offense as charged. *State v. McClelland*, 301 Kan. 815, Syl. ¶ 4, 347 P.3d 211 (2015) ("[T]he State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges.").

Having found the prosecutor erred, we must now determine whether that error requires reversal of Koulaboud's conviction for aggravated assault. The State has the burden to show Koulaboud was not prejudiced by its error, but it failed to file a brief. It has thus waived any argument that the error was harmless. We are therefore forced to find the prosecutor's error prejudiced Koulaboud on the aggravated assault charge and his conviction of that charge must be reversed. See *State v. Brown*, 59 Kan. App. 2d 418, 472, 486 P.3d 624 (2021); *Ellis v. McNeese*, No. 126,900, 2024 WL 4878593, at *11 (Kan. App. 2024) (unpublished opinion) ("We therefore find Defendants have waived

9

any argument on this issue for their failure to brief it."), *rev. denied* 320 Kan. ___ (April 28, 2025).

III. *Did the district court err in denying Koulaboud's request for a continuance?*

Koulaboud also argues that the district court improperly denied his motion for a trial continuance. Although we are reversing Koulaboud's conviction for aggravated assault based on prosecutorial error, he does not contend his attempted murder conviction was impacted by that error. We therefore must still address this issue because if we found the court improperly denied his motion, Koulaboud would be entitled to a new trial on both charges.

We generally review denial of a request for a continuance for abuse of discretion. *Security National Bank v. City of Olathe*, 225 Kan. 220, 222, 589 P.2d 589 (1979). But where, as here, a defendant claims the denial of a continuance interfered with his or her ability to present a defense, we review the question de novo. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015).

K.S.A. 22-3401 provides that "[c]ontinuances may be granted to either party for good cause shown." On June 19, 2022, Koulaboud moved to continue his jury trial which was scheduled to begin the next day. He asked for additional time to review Chavez' medical documents which were apparently provided to him 12 days before. Koulaboud further indicated he needed more time to obtain an expert witness who could respond to this new discovery. Koulaboud reasserted this motion at trial. Both motions were denied.

On appeal, Koulaboud repeats his argument that the first time he learned the full extent of Chavez' knee injury was when he received the State's discovery. He says he was prejudiced by the late receipt of this discovery because he could not present his own medical expert or effectively cross-examine witnesses. He points to "conflicting theories

10

on how [Chavez] broke his knee"—whether it was from when he fell or when Koulaboud allegedly hit Chavez in the knee with the hammer.

Koulaboud fails to persuade us that the district court's reasoning in denying the continuance is unsound. The court determined the degree of Chavez' injury was immaterial to Koulaboud's guilt because injury is not an element of the assault charge and the attempted-murder charge was based on Koulaboud's conduct with the hammer directed at Chavez' head, not his knee. Koulaboud does not address this basis for the court's denial of his motions, nor does he explain why medical expert testimony about how Chavez broke his knee is relevant to the crimes charged. He thus fails to show that "good cause" existed for the court to continue the jury trial. See K.S.A. 22-3401.

Koulaboud maintains Chavez' knee injury was a "contested trial issue" and he thus deserved a continuance. Although trial testimony on the topic might not be uniform, that evidence is not relevant to the charged crimes and consequently not relevant to Koulaboud's defense. We therefore affirm the district court's decision to deny Koulaboud's motion for a continuance.

IV. *Did the district court err in denying Koulaboud's request for a voluntary intoxication instruction?*

Koulaboud also contends he was entitled to a voluntary intoxication instruction to negate the intent element of the attempted murder charge. Although Koulaboud did not testify, he asked the district court for this instruction "based on the Defendant's cross-examination." In any event, the district court denied the request because it determined the instruction was unsupported by the evidence. On appeal, Koulaboud claims the district court erred because he contends there was sufficient evidence in the record to support Koulaboud's impairment, so the jury should have been instructed to determine whether he

11

possessed the culpable mental state to commit the charged offense of attempted second-degree murder.

When analyzing whether the district court erred in failing to instruct the jury on voluntary intoxication, we must first consider whether this instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). If we find the instruction both legally and factually supported, we must then consider whether the court's failure to give the instruction requires reversal or whether the error can be deemed harmless. 313 Kan. at 253.

Under K.S.A. 21-5205(b):

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Since an attempted crime is a specific intent crime, Koulaboud's attempted second-degree murder charge requires specific intent. *State v. Gutierrez*, 285 Kan. 332, 343, 172 P.3d 18 (2007). Therefore the voluntary intoxication instruction is legally appropriate in this case.

Turning to whether the voluntary intoxication instruction was factually appropriate, we need to assess whether there was sufficient evidence, viewed in the light most favorable to Koulaboud, that would have supported the instruction. See *Holley*, 313 Kan. at 254-55. To be factually appropriate, our Supreme Court has held: "Unless the defendant presents sufficient evidence showing intoxication to the extent of impairing the ability to form the requisite intent, a court is not required to instruct the jury on the defense of voluntary intoxication." *State v. Betancourt*, 299 Kan. 131, Syl. ¶ 5, 322 P.3d

12

353 (2014). And "[w]ithout evidence that the defendant is impaired to the extent that he or she has lost the ability to reason, to plan, to recall, or to exercise motor skills as a result of voluntary intoxication, it is not clear error to fail to give a voluntary intoxication instruction." 299 Kan. 131, Syl. ¶ 6.

To factually support this instruction, Koulaboud points to a variety of evidence. He notes Chavez' testimony where he said Koulaboud "was drinking" that day but he did not know how much Koulaboud had consumed. Similarly, a law enforcement officer testified that he smelled alcohol on Koulaboud when he was putting him in his patrol car and believed he found a can or bottle of beer on him when he searched him. Although Chavez' and the officer's testimonies both confirm Koulaboud was drinking that day, that fact alone cannot support a voluntary intoxication jury instruction under *Betancourt*.

Koulaboud cites two other facts to support the instructions. He first states that he had "an inability to reason" because he "made a nonsensical allegation that [Chavez] had 'poisoned'" or "put oil on the clothes in the laundry." And he argues that he lost the ability to exercise his motor skills because he lost his grip on the wooden stick and the hammer during the altercation.

As to his allegation regarding his mental state, caselaw requires the defendant to be "so impaired that he or she has lost the ability to reason." *Betancourt*, 299 Kan. at 141-42. While there was evidence in the record that Koulaboud had been drinking and his actions were an unreasonable response to someone allegedly poisoning or ruining his clothes, there is no evidence that Koulaboud was "so impaired" that he lost his ability to reason. For instance, one of the law enforcement officers stated Koulaboud was not slurring his speech. And although witnesses testified that Koulaboud lost his grip on the hammer and the stick during the attack, there was no evidence presented to suggest that occurred due to Koulaboud's loss of motor skills because he was intoxicated rather than his conduct in striking Chavez. In short, Koulaboud is asking us to make a logical leap

13

because he points to no testimony connecting his alleged impairment to his actions towards Chavez. The evidence shows Koulaboud had been drinking but not that he was necessarily impaired. See *Betancourt*, 299 Kan. at 142 ("There was thus substantial evidence that [the defendant] had been consuming intoxicants, and there was some limited evidence that he was impaired.").

In some cases, the Kansas Supreme Court has found that a defendant's actions after drinking can show whether they were so impaired they could not form the specific intent to commit the crime. See *State v. Gallegos*, 313 Kan. 262, 272, 485 P.3d 622 (2021) (finding that because the defendant recalled a meeting and instructed a person to get in contact with another individual, he was not so impaired he could not form the requisite intent); *Betancourt*, 299 Kan. at 142 (finding that because the defendant possessed sufficient mental function to drive, among other things, he was not so impaired he could not form the requisite intent). And here, Koulaboud's actions provide similar evidence. For instance, the fact that Koulaboud ran away after the attack to escape the police officers could show he was not so impaired he could not run. And by implication, this evidence also shows that he had the wherewithal to realize he was in trouble once he heard the police coming to the crime scene and chose to flee. In fact, one of the officers who apprehended Koulaboud testified that when he drove his patrol car near Koulaboud, Koulaboud changed course and began walking in another direction. And the officer said when nearby witnesses yelled at Koulaboud that the cops were here, Koulaboud said, "[F]uck the cops." Again, this evidence shows he was aware of his surroundings and the criminality of his behavior.

A court need not give a voluntary intoxication instruction unless sufficient proof exists to establish intoxication to the extent of impairing the defendant's ability to form the requisite intent for the charged crime. *State v. Craig*, 311 Kan. 456, 465, 462 P.3d 173 (2020). We find such evidence lacking here. While the jury heard evidence that Koulaboud drank alcohol on the date he committed his crimes, the evidence was not

sufficient to warrant instructing the jury on voluntary intoxication. Koulaboud points to no evidence showing intoxication to the extent it impaired his ability to form the requisite intent for either charge. See *State v. Gadelkarim*, 247 Kan. 505, 508, 802 P.2d 507 (1990) (without such evidence a court is not required to instruct the jury on the defense of voluntary intoxication).

Since the voluntary intoxication instruction is not factually appropriate, we need not address whether the district court's failure to deliver the instruction is reversible. Even so, Koulaboud does not explain how the district court's failure to provide this instruction prejudiced him. While he correctly notes his defense theory was that he did not intend to kill Chavez, his attorney did not argue Koulaboud lacked intent because he was too impaired to form the requisite intent. Rather than arguing Koulaboud displayed an inability to reason or plan due to impairment or that Koulaboud's alleged impairment affected his ability to exercise motor skills, his attorney argued the evidence showed Koulaboud did not intend to kill Chavez because Koulaboud had the wherewithal to put down the lethal weapon—the machete—and used the less lethal wooden stick during the attack. He also claimed the evidence was insufficient to show Chavez was injured during the attack and implied the story of the attack was exaggerated since some witnesses did not render aid or call 911 and the ambulance sirens were not on when it arrived. Defense counsel claimed Koulaboud was "angry, upset, acting disorderly, swung an object at somebody and missed them" but did not try to kill Chavez. Therefore we see no prejudice to Koulaboud in the failure to provide this instruction. See *Betancourt*, 299 Kan. at 142-43 (finding no reversible error because the defendant's consumption of alcohol was introduced but not emphasized or shown to have impaired his ability to form the requisite intent and defense counsel never argued to the jury that the defendant was so intoxicated that he could not form the requisite intent). For these reasons, we therefore affirm the district court's decision not to deliver the voluntary intoxication instruction.

15

V. *Did the district court err in instructing the jury on the aggravated assault charge?*

Koulaboud also asserts the district court erred in failing to instruct the jury on the deadly weapon element of aggravated assault. The court instructed the jury on this charge as follows:

"INSTRUCTION NUMBER 8

"In count two, the defendant is charged with aggravated assault. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly placed Jose Luis Chavez in reasonable apprehension of immediate bodily harm.

2. The defendant did so with a hammer and/or a wooden stick.

3. This act occurred on or about the 8th day of December, 2019, in Seward County, Kansas.

"No bodily contact is necessary.

"A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon."

Problematically, even though the district court described what a deadly weapon could be, it did not tell the jury it had to find Koulaboud used a deadly weapon. Rather, it simply stated it must find that he put Chavez in reasonable apprehension of immediate bodily harm with "a hammer and/or a wooden stick." The standard PIK instruction for aggravated assault, as applied to this case, states:

"The defendant is charged with aggravated assault. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly placed [Jose Chavez] in reasonable apprehension of immediate bodily harm.

16

2.  The defendant did so (with a deadly weapon).
3.  This act occurred on or about the [8th] day of [December], [2019], in [Seward] County, Kansas.

"No bodily contact is necessary." PIK Crim. 4th 54.280 (2019 Supp.).

The standard PIK instruction also provides a definition of deadly weapon:

"A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon." PIK Crim. 4th 54.280.

Since we are reversing that conviction, we need not address the instruction's impact on the verdict. But since the State may retry Koulaboud on this charge, we feel compelled to address the district court's error. We presume the court's modification to substitute "a hammer and/or a wooden stick" for "a deadly weapon" was a typo. So if the State chooses to retry Koulaboud on this charge, we suggest the court use the standard PIK instruction or, if modified to add the phrase "a hammer and/or wooden stick," then the phrase "a deadly weapon" must remain in the instruction. That is, the court could permissibly modify the instruction to read in part 2: "The defendant did so with a deadly weapon: a hammer and/or wooden stick." We leave it to the district court's discretion as to which of these options it wishes to choose.

CONCLUSION

Based on the State's failure to satisfy its burden to show the prosecutor's error was harmless, we reverse Koulaboud's aggravated assault conviction and remand for a new trial on that charge. Although Koulaboud is appealing both convictions, only the aggravated assault was affected by the error. See *State v. Bliss*, 61 Kan. App. 2d 76, 113, 498 P.3d 1220 (2021) ("[W]e reverse one of Bliss' convictions for aggravated kidnapping

17

and vacate the sentence for that conviction. We affirm Bliss' other convictions and sentence."); *State v. Hawkins*, 40 Kan. App. 2d 10, 11, 188 P.3d 965 (2008) ("Concluding the district court erred in its response to a jury question, we reverse Hawkins' conviction for aggravated assault and remand for new trial on that charge, but we affirm the remaining convictions.").

Affirmed in part and reversed in part.

\* \* \*

ARNOLD-BURGER, J., dissenting:  I respectfully dissent. I believe there was insufficient evidence to support finding Koulaboud guilty of aggravated assault with a deadly weapon as charged in this case. In addition, I believe the district court's refusal to give a voluntary intoxication instruction requires reversing Koulaboud's attempted murder conviction. I otherwise concur with the majority's conclusions on the remaining issues.

FACTS

The majority accurately sets forth the facts of this case and there is no need to reiterate them here.

*The State failed to present sufficient evidence to convict Koulaboud of aggravated assault.*

Koulaboud was charged as follows:

"That on or about the 8th day of December, 2019, in Seward County, Kansas, Kongkeo Koulaboud, then and there being present did unlawfully, feloniously, and knowingly

18

place Jose Luis Chavez in reasonable apprehension of immediate bodily harm with a deadly weapon, to wit: a hammer and a wooden stick."

I pause to note that it is unclear how this morphed into "a hammer *and/or* a wooden stick" in the charging instruction. (Emphasis added.) But regardless, the State never claimed that the aggravated assault charge was based on placing Chavez in fear of harm from a hammer or a stick or anything other than a machete.

In its opening statement, the State argued that when Koulaboud first came out of the house with a machete threatening to kill him, Chavez told Mattich that he did not want him to call the police. The State went on to explain its theory of the case:

"The Defendant in count two is charged with aggravated assault. Aggravated assault was charged for the point when he was—came out on the steps with the machete and was yelling and screaming at Mr. Chavez that he was going to harm him. In this version of aggravated assault he has to of had a deadly weapon. It's the State's allegations the *machete was or can be used as a deadly weapon* and therefore he's charged with aggravated assault for threatening or causing Mr. Chavez to be in reasonable apprehension meaning making Mr. Chavez thinking he could hurt him or would hurt him *with the machete*. So those are the two charges in this case." (Emphases added.)

So the State began its case by claiming the machete was the deadly weapon that formed the basis for the aggravated assault charge. It never mentioned a stick or a hammer—let alone a stick *and* a hammer, as forming the basis for the aggravated assault charge.

At trial, Mattich testified that Koulaboud came out on the front porch with a machete in his hands. He was yelling about the condition of his clothes alleging that Chavez had somehow poisoned Koulaboud's clothes. He appeared angry with Chavez, who was working on an automobile in the front yard. He remained on the porch yelling

for 10 minutes. When Mattich asked Chavez what was going on, Chavez responded, "[I]t's nothing, just leave it alone." There was no more discussion of a machete. Koulaboud went back inside his camper which was located behind Chavez' house and apparently put the machete under his mattress. It was only later that Mattich saw Koulaboud push Chavez to the ground and start hitting him with a stick. That is when Mattich called 9-1-1.

Chavez confirmed Mattich's testimony that he told Mattich that even though Koulaboud was screaming at him on the porch with a machete, "I told him not to worry about it . . . that he wasn't going to hit us." In response to Koulaboud's screaming, Chavez told Koulaboud if he didn't like it, he could just leave.

During the jury instruction conference, the prosecutor asked the court to include the term "machete" in the list of items in the aggravated assault instruction. The court declined since the charging document did not include the term "machete" and the instruction matched the charging document. The prosecutor responded, "Okay."

During closing argument the prosecutor claimed that it was only after Chavez told Koulaboud to leave that he became angry, went back to his camper/trailer, put the machete away and returned with a hammer and a stick having then formed the intent to kill Chavez. The State continued to claim, as it did in opening statement, that the "machete in itself was a threat and an intimidation." The prosecutor made no attempt to tie the wooden stick or hammer to the aggravated assault charge, arguing only that the objects were used in the commission of an attempted murder.

So the State's theory of the case, from the beginning as presented to the jury was that the machete was the deadly weapon that placed Chavez in apprehension of bodily harm and made up the basis of the aggravated assault charge. But the machete wasn't

20

mentioned in the charging document, and Chavez denied then that he was placed in any fear by the machete. The evidence did not support the State's theory.

The majority concedes the State's theory—that the machete was the deadly weapon that placed Chavez in fear of bodily harm—did not match the charge. And the majority concedes that Chavez did not specifically say he feared Koulaboud's use of the hammer or the stick (let alone the hammer *and* the stick). But it claims this lack of evidence is not dispositive. Slip op. at 5.

The majority concludes that the two key questions in resolving Koulaboud's sufficiency challenge are whether the State presented evidence that (1) Chavez experienced "reasonable apprehension of bodily harm" from the "hammer and/or wooden stick"; and (2) either the hammer or wooden stick could be considered a "deadly weapon." Slip op. at 6-7.

On the first question, the majority concludes that even though it was not part of the State's theory of the case, circumstantial evidence shows Chavez was placed in reasonable apprehension of immediate bodily harm by Koulaboud wielding either object. See *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016) ("[A] conviction of even the gravest offense can be based entirely on circumstantial evidence."). Although Chavez did not testify he was in immediate apprehension of bodily harm with a deadly weapon when Koulaboud used the hammer and the stick, the majority uses circumstantial evidence to conclude that he was. In support, the majority relies on the evidence that Koulaboud came directly at him with the stick and hit him with the stick very hard; Koulaboud was angry like a demon and told Chavez he wanted to kill him; and Chavez tried to run away and tried to fend off the attack. Slip op. at 6.

There are several problems with this approach.

21

First, and foremost, this was not argued by the State at trial. The majority urges us to ignore the State's theory and determine for ourselves whether the evidence matches the charge under *any* theory. The State is apparently an irrelevant player in the analysis. But a defendant is tasked with defending against the State's theory of their guilt. When the jury is allowed to consider a theory of guilt not argued by the State, the defendant is denied a fundamental liberty interest secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution—also known as the right to a fair trial. See *State v. Sherman*, 305 Kan. 88, Syl. ¶ 1, 378 P.3d 1060 (2016).

Second, let's look at this another way. The majority has, in essence, turned this into a multiple acts case. The machete could have been the basis for the aggravated assault, or it could have been the hammer, or it could have been the stick. We are going to let the jury sort it out and we are not going to let them even consider the machete. But when the facts of a case support multiple acts, any one of which would support the crime charged, to assure juror unanimity on the particular act upon which the jury relies, the courts either require a multiple acts instruction or that the State elect its theory. See *State v. Castleberry*, 301 Kan. 170, 185, 339 P.3d 795 (2014) (finding that to avoid error, the State must have informed the jury which *act* to rely upon or the district court must have instructed the jury to agree on the specific *act* for each charge). If the State elects a particular theory, then that is the theory under which we assume the jury convicted the defendant. Here, the State clearly elected its theory, and it did not include any of the acts charged in the complaint or the jury instruction.

Moreover, by time it came to closing argument, perhaps in recognition that its theory did not match the charge and it was denied the opportunity to add "machete" to the list of weapons, the State clearly abandoned the aggravated assault charge and focused on the evidence in support of the attempted murder charge. Following the State's lead, the defense also focused on the evidence necessary for the attempted murder charge. When the State's theory of the criminal conduct and their evidence to support that theory does

22

not match the language of the charging document, the defense should be able to rely on that and not be forced to defend against some other interpretation that an appellate court may divine after the fact. To hold otherwise impinges on a defendant's due process rights resulting in the denial of his fundamental right to a fair trial.

This error is further complicated by the majority's approach at addressing the second question implicated by Koulaboud's sufficiency challenge: whether the evidence shows the wooden stick or hammer was a "deadly weapon." The State did not argue either were deadly weapons in connection with the aggravated assault charge. But taking the approach of the majority, that it doesn't matter what the State claimed, I have no trouble agreeing that a hammer could qualify as a deadly weapon under the circumstances present here. But the evidence does not support that Chavez was in any apprehension of harm from it. There was some evidence presented that Chavez did not even realize that Koulaboud had a hammer. Chavez was never struck with the hammer, although witnesses confirmed that Koulaboud was attempting to hit Chavez with the hammer. And while Chavez knew Koulaboud had the wooden stick—and was placed in reasonable apprehension of immediate bodily harm from it while being chased—even the majority admits that "the evidence to support a finding that the wooden stick was a deadly weapon is less clear." Slip op. at 8. Chavez testified he was hit one time with the stick and then fell as he was running away. In short, I believe the evidence is insufficient to support the "deadly weapon" requirement of the aggravated assault charge because (1) even if the evidence supported a finding that Chavez was placed in reasonable apprehension of immediate bodily harm by Koulaboud wielding the wooden stick, the State did not prove it was a deadly weapon, and (2) although the hammer is a deadly weapon, Chavez was unaware of the hammer such that he was placed in reasonable apprehension of immediate bodily harm from it.

And if this were not enough, when faced with Koulaboud's arguments regarding the sufficiency of the evidence on appeal, the State has failed to file a brief and respond

23

to Koulaboud's grounds for reversal of the aggravated assault charge. An issue not briefed is deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). It is not our responsibility to make the State's case for it.

Accordingly, I would reverse Koulaboud's conviction for aggravated assault based on insufficient evidence. *State v. Scott*, 285 Kan. 366, 372, 171 P.3d 639 (2007) ("If an appellate court holds that evidence to support a conviction is insufficient as a matter of law, the conviction must be reversed; and no retrial on the same crime is possible.").

*The district court further erred in denying Koulaboud's request for a voluntary intoxication instruction.*

Another issue raised by Koulaboud concerns the district court's refusal to instruct the jury on voluntary intoxication as a defense to the attempted second-degree murder charge. I agree with the majority's conclusion that a voluntary intoxication instruction was legally appropriate based on K.S.A. 21-5205(b) and *State v. Gutierrez*, 285 Kan. 332, 343, 172 P.3d 18 (2007). Slip op. at 11-12. I depart, however, from the majority's determination that such instruction was not factually appropriate here. I believe there was enough evidence to support giving the instruction. See slip op. at 14-15.

As the majority notes, Koulaboud relies on testimonial evidence to show that a voluntary intoxication instruction was factually appropriate: Chavez testified that Koulaboud was drinking that day, plus the arresting officer testified that he smelled alcohol on Koulaboud and collected a container of beer on Koulaboud's person while conducting a search incident to the arrest. When asked if Koulaboud showed other signs of intoxication like bloodshot, watery eyes or slurred speech, the arresting officer stated, "I don't recall," which is not an unequivocal denial. In addition, there were empty beer cans around Koulaboud's camper. In short, viewed in the light most favorable to

Koulaboud, this evidence certainly shows Koulaboud consumed alcohol at some point before his arrest.

Yet evidence of mere consumption alone is not enough, as the defendant must also show evidence of "intoxication to the extent of impairing the ability to form the requisite intent," which may include loss of the ability to reason, to plan, to recall, or to exercise motor skills. *State v. Betancourt*, 299 Kan. 131, 141-42, 322 P.3d 353 (2014). Koulaboud asserts the evidence shows impairment because of his "nonsensical allegation that [Chavez] had 'poisoned' his clothes" and his inability to exercise motor skills because he lost his grip on both the wooden stick and hammer. In addition, Chavez testified that Koulaboud was out of control and his anger was demon-like. "Demon-like" anger is not ordinary and would appear to point to some sort of impairment. I have no hesitation that when the evidence is viewed in the light most favorable to Koulaboud, a voluntary intoxication instruction was factually appropriate. *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009) (finding that evidence must be viewed in the light most favorable to the defendant to justify a rational fact-finder finding in accordance with the defendant's theory).

Accordingly, because of the district court's instructional error, the analysis must turn to whether failing to give a voluntary intoxication instruction requires reversal of the attempted second-degree murder conviction. Since Koulaboud preserved this claim for appeal by requesting the instruction, we review for harmless error. *State v. Holley*, 313 Kan. 249, 254, 256-57, 485 P.3d 614 (2021). And because failing to give a voluntary intoxication instruction impacted Koulaboud's theory of defense, we must apply a constitutional harmless error test. See *State v. Andrew*, 301 Kan. 36, 46-47, 340 P.3d 476 (2014). Under that test, the State bears the burden of showing that there was no reasonable possibility that the alleged error contributed to the jury's verdict in light of the entire record. See *Holley*, 313 Kan. at 256-57. After reviewing the evidence of the chaotic events that took place that day and Koulaboud's strange behavior and drinking, I am not

25

able to find the error to be harmless. But regardless of my thoughts, the State has failed to meet its burden to show it was not harmless by failing to file an appellate brief. Accordingly, I would also reverse the conviction for attempted second-degree murder and remand for a new trial on that charge.